(61 App. Div. 51.)

NICHOLSON v. STERNBERG et al.

(Supreme Court, Appellate Division, Fourth Department. April 30, 1901.)

1. MALICIOUS PROSECUTION—PROBABLE CAUSE—EVIDENCE.
    A conviction before a justice of the peace is but prima facie evidence
    of probable cause in an action for malicious prosecution.
2. SAME—DAMAGES—EVIDENCE.
    The treatment that plaintiff was subjected to while at the penitentiary,
    between the time of his conviction by a justice of the peace and his ap-
    peal, may be shown in an action for malicious prosecution.
3. SAME—EVIDENCE—MOTIVE.
    In an action for malicious prosecution of plaintiff for having obtained
    hotel accommodations, and thereafter absconded with his baggage, with
    intent to cheat the hotel proprietor out of the price of the accommoda-
    tions, evidence that the proprietor's bartender told plaintiff that, if he
    would go out and get his money, he would keep the proprietor quiet till
    plaintiff came back, and that he might take his clothes with him, is ad
    missible on the question of his motive in leaving the hotel.

Appeal from trial term, Onondaga county.

Action by Herman Nicholson, by guardian, against Jonathan
Sternberg and another. From a judgment on a verdict for plaintiff,
and from an order denying a motion for new trial on the minutes,
defendant Sternberg appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and LAUGHLIN, JJ.

George W. Driscoll, for appellant.
John H. McCrahon, for respondent.

WILLIAMS, J. The judgment and order appealed from should
be affirmed, with costs. The action was brought to recover damages
for alleged malicious prosecution. The appellant defendant insti-
tuted the prosecution of the plaintiff complained of by making affi-
davit before the other defendant, Maine, a justice of the peace of
the town of Manlius, Onondaga county, and procuring a warrant
to be issued by such justice for the crime of obtaining food and other

hotel accommodations at appellant's hotel to the amount of $14.31, and thereafter absconding and surreptitiously removing his baggage therefrom, with intent to cheat and defraud appellant out of the price of said food and accommodations, contrary to section 382, Pen. Code. The affidavit was made and warrant was issued January 21, 1898. The crime was charged to have been committed on or about December 13, 1897, and for several days thereafter, in the town of Manlius. The plaintiff was not arrested on the warrant until April, 1898, and was not tried until June 27, 1898, when he was convicted and sentenced to imprisonment in the Onondaga county penitentiary for 60 days, or to pay a fine of $10. A commitment was made out by the justice, and under such commitment plaintiff was taken to the penitentiary. He was treated as prisoners usually were who were committed to that institution, and then, after being imprisoned there for five or six hours of one day, he was released, on an appeal being taken from the judgment to the county court, and bail given, as we assume, although it does not very clearly appear from the record. The judgment of conviction was reversed by the county court, and a judgment reversing the conviction and discharging the plaintiff herein from custody was entered November 29, 1899. This action was brought the 12th day of April, 1900. The commencement of the prosecution and its termination favorably to the plaintiff were therefore unquestioned. Malice, so far as necessary to maintain the action, might be inferred from the want of probable cause, so that the only two issues submitted to the jury were want of probable cause and the amount of damages. The appellant claims that the judgment of conviction, even though reversed by the county court on appeal, was conclusive evidence of probable cause, and therefore want of probable cause should not have been left to the jury as a question of fact, their finding of that issue favorably to the plaintiff cannot be supported, and the action cannot be maintained. For this proposition Palmer v. Avery, 41 Barb. 290, affirmed in court of appeals 41 N. Y. 619, without opinion, is cited. In that case Avery brought an action in justice's court against Palmer, but allowed the action to go down by not appearing on the return day. A second action was commenced for the same cause, and was allowed to go down in the same manner. A third action was then commenced for the same cause, issue was joined, the action was tried, both parties bringing witnesses, and a judgment was recovered for plaintiff for $100, an appeal was taken, and a new trial was had in county court, where a judgment was recovered by the defendant. An appeal was taken to the supreme court, and that appeal was pending and undetermined when the action for malicious prosecution was commenced, tried, and determined on appeal. This action for malicious prosecution was commenced after the trial of the third action in justice's court, and before the trial of such action in county court. The action for malicious prosecution was tried after the trial of the third action in county court. A motion for nonsuit was made at the close of the evidence on the grounds: (1) Because the defendant had shown probable cause of action against the plaintiff by showing a judg-

ment in favor of defendant against the plaintiff in justice's court; (2) because the litigation was not terminated in favor of the plaintiff when this action was commenced. The court nonsuited on the first ground, without passing upon the second, holding the judgment of the justice prima facie evidence of probable cause, and refusing to submit the question of probable cause to the jury on all the evidence as a question of fact. This result was affirmed at general term, held by Morgan, Bacon, and Foster, JJ., but they did not agree upon the ground of affirmance. Morgan and Foster, JJ., agreed that there was no question for the jury as to the want of probable cause, because the judgment rendered by the justice was conclusive upon that question in the absence of any proof of fraud, conspiracy, or subornation in procuring the judgment, while Bacon, J., was of the opinion that the judgment of the justice was prima facie evidence merely of probable cause, and should have been submitted to the jury with all the other evidence in the case, and the jury allowed to pass upon the question of probable cause as one of fact. Bacon and Foster, JJ., agreed that there was no termination of the prosecution complained of favorably to the plaintiff proven, while Morgan, J., refused to consider or pass upon that question. The opinions of the judges upon that appeal reviewed most of the cases now cited by counsel here. In view of the fact that no reason was assigned by the court of appeals for its affirmance in the case, we are left in doubt as to whether they agreed with the one or the other opinion as to the proof of probable cause. They must have been satisfied that there was no proof of the termination of the prosecution favorably to the plaintiff. In Burt v. Place, 4 Wend. 593, it was held that a judgment in justice's court in favor of the defendant was prima facie evidence merely of probable cause, not conclusive evidence, and was subject to be overcome by other evidence in the case, including the judgment of the common pleas reversing the judgment of the justice. This case was a well-considered case, and the opinion of the court reviewed many of the cases considered in Palmer v. Avery, above. It was followed by Bacon, J., in the latter case, but not by Morgan, J.

We are not aware that this question has ever arisen or been passed upon by the courts of this state since the Palmer v. Avery Case, which was decided in 1864, nearly 40 years ago. It seems strange that such should be the case, when these actions for malicious prosecution are so frequently before the courts. It will hardly be useful to enter into a discussion of the question anew. It seems to us that the rule, making the justice's judgment conclusive evidence of probable cause, and throwing upon the plaintiff the burden of proving fraud, conspiracy, or subornation in procuring the judgment, is too severe a one, and that every right of the defendant is preserved by holding the judgment of the justice merely prima facie evidence of probable cause, and liable to be overcome by the reversal of the judgment by the appellate court and any other evidence that may be given bearing upon the subject, and making the question of probable cause a question of fact for the jury, upon all the evidence in the case. Justices are not ordinarily men of

great ability or extraordinary good judgment or common sense. The complainant in a criminal prosecution goes to a justice ex parte, tells him about the case, elicits his attention, and creates an interest in the matter against the accused person.    The justice is liable, when he finally considers the case, to make a mistake as to the law or the facts, and to convict the accused without any law or facts to justify such a result.    The appellate court, when the case is brought before it on appeal, promptly reverses the conviction and discharges the accused.    The justice may have acted honestly, but mistakenly.    Ought the accused person to be denied the right to recover damages for a clearly malicious prosecution merely because of the decision of the justice, unless he can show fraud, conspiracy, or subornation in procuring the judgment?    We think not.    If the case is so weak that the defendant would be charged with want of probable cause in the absence of the decision of the justice, all the rights defendant is entitled to will be secured to him by making the decision of the justice prima facie evidence of probable cause, and requiring the plaintiff to overcome this prima facie case, and leaving the whole question as one of fact to the jury.    This question does not appear to have been expressly raised in the case on the trial by motion for nonsuit or request to hold or charge.    If it had been, and the court had been inclined to regard evidence of fraud, conspiracy, or subornation necessary, the plaintiff might have given evidence upon that subject which he did not give on the trial, and might certainly have asked to go to the jury upon the evidence already in the record upon the subject of the honesty of the judgment.

It is claimed that the justice was a lawyer, and the attorney for the defendant, and that they counseled together as to this prosecution, and then it was instituted by the client before his own attorney as justice.    The prosecution, after it was commenced, was allowed by the defendant and the justice to rest from January to April, before the plaintiff was arrested on the warrant, and to be delayed thereafter until June 27th, before the plaintiff was tried and convicted.    These and other considerations were proper for the jury upon the question of the honesty of the judgment, if the question had been fairly raised, as it is now presented on this appeal. Under all the circumstances, we think there is nothing in this claim by the defendant calling for a reversal of this judgment.

There are many exceptions to the admission of evidence in the record, but only a few of them call for special consideration.    What occurred at the penitentiary—what was done to the plaintiff there— was a proper subject of inquiry and evidence on the trial.    The plaintiff was allowed to and did testify fully upon that subject.    In addition to this, however, Mr. Markell, the superintendent of the penitentiary, was called.    He was not able to say that he ever saw the plaintiff at the penitentiary or that he was present at the time anything was done to him.    In the face of frequent and repeated objections on the part of the defendant and exceptions to the rulings of the court, this witness was permitted to testify to the invariable custom of the penitentiary authorities and employés in the

treatment of prisoners brought there for imprisonment under conviction and sentence for crime, the questions asked and answered, the description taken, the measurements made, the entries upon books of the answers made, of the description and measurements made, the search of his person, the taking of photographs of his face, and to describe in detail the Bertillon system of measurements, which was always made. The court remarked, in ruling upon this evidence, that it was allowed upon the assumption that the plaintiff would show this uniform practice was applied in his case. The plaintiff was called as a witness, as already stated, and gave an account of the treatment he received, which substantially conformed to the uniform custom testified to by the superintendent. While technically the question was what treatment the plaintiff was subjected to, and the uniform custom in the treatment of prisoners would be unimportant, and probably incompetent and improper, yet when the custom and the actual treatment of the plaintiff did not materially differ no harm or injustice can be said to have been done the defendant by the admission of the superintendent's evidence, and the judgment should not be reversed for such alleged error. Another piece of evidence objected and excepted to was that given by the plaintiff as to a conversation had by him with Mr. Muckey, the defendant's bartender, viz. that the bartender told him, if he (plaintiff) would go and get his money, he (bartender) would keep defendant quiet until he came back; that he asked the bartender if he should leave his clothes there, and the bartender said, "No; to take them with him." This, it is said, was a conversation between plaintiff and a person other than the defendant, and not in his presence. It was offered, however, as bearing upon the motive of plaintiff in leaving defendant's hotel, as showing that he was acting honestly, and not in the manner charged by defendant. The plaintiff was a young boy, and this talk to him was by a man in the defendant's employ, who claimed to speak with authority and ability to control defendant, and the claim is that this talk had an influence upon the plaintiff, and showed his going away was for an honest purpose, and not an absconding, for the purpose of cheating and defrauding defendant. We think the evidence was properly admitted by the court as bearing upon that question. We see no reason for disturbing the verdict of the jury.

The judgment and order appealed from should be affirmed, with costs. All concur; LAUGHLIN, J., in result.