(15 Misc. Rep. 663.)

## LIMBECK v. GERRY.

(Supreme Court, Trial Term, New York County.   February 26, 1896.)

1. FALSE IMPRISONMENT—WHAT CONSTITUTES.
   False imprisonment is the unlawful detention of the person without regard to motive.

2. SAME—EXERCISE OF FORCE OR AUTHORITY.
   An actual laying on of hands, or personal violence, is not necessary, but any deprivation of the liberty of another without his consent, whether it be by actual force, threats, or otherwise, constitutes an imprisonment, where the act relied on as an arrest was intended as such, and so understood by the party arrested.

3. SAME—DIRECTING ARREST BY POLICEMAN.
   Defendant is not liable for false imprisonment where he complained to the police authority of the robbery, and stated various circumstances of suspicion which had come to his knowledge, and the police officer made inquiries into the circumstances, and on his own authority arrested plaintiff.

4. SAME—REASONABLE GROUNDS.
   One who causes an innocent person to be arrested on a criminal charge is liable for false imprisonment unless there was reasonable ground to suspect the person arrested.

5. SAME—BURDEN OF PROOF.
   In an action for false imprisonment the burden of proof is on plaintiff to show that he was arrested at the direction or procurement of defendant without probable cause.

6. SAME—MISTAKE AS TO FACT.
   One who causes an innocent person to be arrested on a criminal charge is not liable where the apparent facts are such that a discreet and prudent person would be led to the belief that a crime had been committed by the person charged, as public policy requires that one who in good faith, and on reasonable ground, causes an arrest on a criminal charge, shall be protected.

7. SAME—PUNITIVE DAMAGES.
   Punitive damages may be awarded where an illegal arrest is maliciously and wantonly made.

Action by Margaret Limbeck against Elbridge T. Gerry for false imprisonment.   Verdict for defendant.

Edwin T. Taliaferro, for plaintiff.

De Lancey Nicoll and George C. De Witt, for defendant.

GIEGERICH, J. (charging jury).   This action is brought to recover damages claimed in consequence of plaintiff's alleged illegal arrest, or, as it is more usually denominated, "false imprisonment." False imprisonment is the unlawful restraint of a person contrary to his will, either with or without process of law.   It is a trespass to the person, committed by one against another, by unlawfully arresting and detaining him against his will; a direct wrong or illegal act, in which the defendant must have participated, or which must have been of his direct or indirect procurement.   Two things are requisite in order to constitute the offense:   (1) Detention of the person; (2) the unlawfulness of such detention.   A pure, naked, unlawful detention, unaffected by any question of motive or purpose, constitutes false imprisonment.   The want of lawful authority is an essential element of the offense; malice is not.

The allegations of the complaint, in substance, are: That on the 25th day of August, 1893, at the city of Newport, in the state of Rhode Island, one Richards imprisoned the plaintiff for the space of two hours; that the defendant aided, abetted, and procured such imprisonment, which the plaintiff avers was without reasonable cause, and without any right or authority on the part of the said Richards or the defendant, and that the same was done maliciously, with intent to injure the plaintiff, and by force and against her will, and was unlawful; whereby plaintiff was insulted and humiliated, and was injured in her credit, character, and reputation, and whereby and wherefrom she suffered great pain and anguish of mind and body. The answer of the defendant is a general denial of these allegations which I have read, and, as a further defense, and in justification of all of defendant's acts in the premises, he alleges, in substance, as follows: That in the latter part of June, 1893, in London, England, the defendant engaged the plaintiff as a servant in his family; that the defendant, with his family, accompanied by the plaintiff, arrived in New York from England about July 5, 1893, and proceeded to Newport, R. I., where they occupied a cottage in said city; that the services of the plaintiff were specially rendered to defendant's eldest daughter as maid and personal attendant, and in the performance of such duties the plaintiff had charge of the room and personal effects of defendant's said daughter; that on or about August 17, 1893, during the absence of this defendant and his family from said cottage, which was left in charge of defendant's servants, including the plaintiff, a felony was committed in said cottage, and certain valuable jewels and jewelry were stolen from the room occupied by the defendant's said daughter; that the articles stolen consisted of several diamond pins, a pearl bracelet, and diamond and emerald ring, which were usually kept in a bureau drawer in boxes; that the articles were taken from the boxes, and each box closed and replaced; that articles of solid silver which were on the bureau, and other valuable articles in the bureau, were not taken; that upon the discovery of said felony notice thereof was given to the police authorities, and B. H. Richards, a police officer of the city of Newport, proceeded to investigate the circumstances of said robbery; and that all of defendant's servants, excepting the plaintiff, had been in defendant's employ for a long time. In addition to the answer as originally drawn (the same having been amended on this trial) it states that when the defendant first met the plaintiff she wore an unusual kind of jewelry; that she had the custody of the jewels; that the defendant was never robbed before; that it was known to the plaintiff that he and his family would be away on the day this supposed robbery took place; that neither the silverware nor the other pins which were in the room of his daughter were taken; that there was no evidence of disorder in the room; that other articles of greater value, which might have been taken, were not; that the plaintiff represented one Steers to be a half-brother, when in fact he was not such; that she went out walking at an unusually early hour in the morning with a married man, whom she also represented to be her brother; and that there was no ex-

planation made by her of the robbery, nor why she had not locked up the jewelry. And the answer further alleges that on or about the 25th day of August, 1893, the said B. H. Richards called at defendant's cottage, and requested the plaintiff to accompany him to the office of the chief of police, and make a statement in reference to said felony; that thereupon the plaintiff accompanied said Richards to the police headquarters, and subsequently returned to defendant's house; that on the 28th day of August, 1893, the plaintiff left defendant's service; that this defendant never made any charges or accusations against said plaintiff in reference to said felony; all his acts in the premises were without malice, and that there was reasonable cause for his action.

The facts I have stated are also alleged in mitigation of damages which might be seen fit by you to be given in this case, if you should come to the conclusion that she is entitled to any.

The very first question for you to decide is whether or not the plaintiff was arrested as alleged in the complaint. If you find that she was not, you may end your deliberations right there, and bring in a verdict for the defendant; for, in order to recover, the plaintiff is bound to establish this proposition to your satisfaction by a fair preponderance of the evidence, and, if she has failed to do that, or in case the evidence upon this point is evenly balanced, so that it does not preponderate in favor of one side or the other, your verdict will be in favor of the defendant. In order to constitute an arrest, an actual laying on of hands or personal violence is not necessary; it is simply necessary that the arrested party be within the control of the officer or other person making the arrest, and submit himself to such control in consequence of some claim or right to make the arrest or authority to make it by such officer or other person. Any deprivation of the liberty of another, without his consent, whether it be by actual violence, threats, or otherwise, constitutes an imprisonment within the meaning of the law. And I charge you at this point, at the request of the plaintiff, her tenth and eleventh propositions:

"I further charge you that it was not necessary that the plaintiff be touched or actually arrested. If she had reasonable grounds to apprehend that coercive measures would be used, and under such circumstances submitted, then it is sufficient to prove an arrest.

"I charge you further that actual force is not necessary to constitute an arrest. An arrest may be made by a show of force or threats; and such show of force or threats, if submitted to, is as much an arrest as if such arrest had been forcibly accomplished."

The act relied upon as an arrest must have been intended as such, and so understood by the party arrested, or there is no imprisonment. The contention of the plaintiff as to the alleged arrest and detention, briefly, is that she did not willingly accompany Detective Richards to the station house; that she was placed in a closed carriage by Richards and taken by him, against her protest, to the station house, where she was questioned, among other things, about the robbery; and that she returned to the house of the defendant in the same carriage, where her effects were examined by the latter officers in her room in defendant's house, without a search warrant,

and without her consent. The claim of the defendant upon this question, in short, is that the plaintiff was not arrested, but volunteered to accompany Richards to the station house, in order, as witnesses for the defendant testify, to make a statement with respect to the robbery of the jewels; and that plaintiff's effects were examined, not by Richards and Capt. Garnett, but by her, with a view of showing her innocence. Now, gentlemen, you have heard the proofs in this case, including the testimony of the plaintiff upon one side,, and the testimony of the defendant, Detective Richards, and Capt. Garnett on the other, and I leave it to you to determine from the entire evidence whether or not the plaintiff was arrested. And at this juncture I deem it proper to charge you at the request of the defendant, as follows:

"Seventh. That if the plaintiff went voluntarily, as testified by the defendant's witnesses, there was no arrest. Eighth. That unless the plaintiff was either taken by force or yielded from fear to the authority and control of the officer, Richards, no arrest took place." "Thirteenth. Visiting a police station with an officer to make a statement does not constitute an arrest."

I charge you the fourteenth in the following modified form:

"Fourteenth. When a felony has been committed, the police are charged with the duty of investigating it, in order to ascertain who has committed it; and for that purpose may request the attendance at the police station, for the purpose of examination, of all persons whom they have reason to believe have any knowledge of the offense or the means whereby it was committed."

And the fifteenth in the following modified form:

"Fifteenth. A person so requested to attend, and who has not been, and is not, charged by the police with any participation in the crime, cannot be said to have been arrested."

I charge the seventeenth request in the following modified form:

"Seventeenth. If the jury believe that the Newport police, whether on their own responsibility or at the request of the defendant, merely requested the plaintiff to go to police headquarters for the purpose of making a statement of her knowledge of the loss of the jewels, then the jury must render a verdict for the defendant."

If you find, gentlemen, however, that the plaintiff was arrested, as alleged by her, you will proceed to the question whether the same was had at the procurement or direction of the defendant. You will recollect that the defendant's contention throughout the trial of this case has been that he merely notified the police of the robbery, and left the entire matter in their hands. The testimony with respect to the defendant's alleged participation in the arrest, is as follows (I quote from the testimony of Margaret, as furnished by the stenographer):

"Q. What took place then? A. Mr. Richards ceased speaking, and Mr. Gerry began to speak to me, and he said he wished me to go with this man. He said in a very kindly manner— Mr. Gerry stood and said, 'If you can recover for Miss Gerry her jewels, or assist in any way, would not you do so?' and I said: 'Yes, sir; I would do everything I could; but I cannot give this man any more information if I were to go with him than I could now;' and he said: 'It is immaterial. You will have to go with him. He is an officer. He is sent down here by the police authorities, and I am well acquainted with him. You will have to go with him.' And I said: 'I cannot tell any more. Why do I want to go with him?' 'Tut, tut, tut, tut,' he said, 'you

must go with him.' Mr. Gerry then being my master, I could not refuse. I had to go. Q. Did you go willingly? A. No, sir; I did not. Q. Mr. Gerry said you would have to go with him; that he was an officer of the police? A. Yes, sir."

And she further testified:

"Q. In the conversation you had with Mr. Gerry, in which he said you must go, or you would have to go, and that this man belonged to the police authorities, did he say anything about whether he knew this man was coming or not, or how he knew the man, what his business was, or anything of that sort? A. Yes, sir; he did. Q. What did he say? A. He said he had committed the matter into the hands of the police, and that this man had been sent down, and I was suspected, and I had to go with him."

I quote from the testimony of the defendant upon his direct examination:

"Q. Now, what occurred, as near as you can recollect it? A. The plaintiff came in and said: 'There is a man who wants me to go with him, from the Central Police Station. Says he is a detective. I have heard of people being kidnapped, and I don't like to go with a strange man that I don't know anything about.' I said: 'You need not trouble yourself about it. I know Mr. Richards to be an officer connected with the Central Police Station. The probability is that the police desire to consult with you, or obtain information from you, in reference to the robbery.' 'Well,' she said, 'you are my master. What do you advise me to do?' I said: 'I don't give you any advice at all. I don't understand that you are under any necessity to go. You are at liberty to do just as you please. You can go with him or not, as you choose.' She said: 'If that is the case, I will go with him. I did not care to go away with a man I did not know anything about.' And then they went down the steps, and drove off together."

And Mr. Richards, the detective, in his direct examination, testified as follows:

"Q. Did she [meaning the plaintiff] come down again? A. She did. Q. Was she dressed to go? A. I don't think she was. She came in answer to Commodore Gerry. While upstairs there was some talk about not knowing who I was. Just then the commodore came in, and he said, 'Do you want to see me, Richards?' and I said, 'No, sir; I have called to see Miss Limbeck,' and he said, 'All right,' and he rang a bell, and sent a second man— a footman or something—to tell Miss Limbeck to come. Miss Limbeck responded. Q. She came down to where,—to what room? A. The commodore and I were in the hall downstairs, where I stood; and she came down there, and says, 'There is a man who says he is a detective, and wants me to go with him.' I don't remember whether she said where, but she simply said, 'He wants me to go with him, and I don't know him,' and said something about being kidnapped, or something like that. The commodore said, 'That is all right;' that he knew me; it was all nonsense, and he presumed that we wished her to go to the station to make a statement regarding this matter. Q. Did he tell her that she was free to go or not, as she chose? A. Well, I don't remember any such conversation as that. Q. Have you stated all that was said. A. She said something about, if that was— I forget her exact words; but the effect was that it was all; that it was all right, and she would go; and in consequence she did go."

It is not absolutely necessary to show that the defendant gave personal orders or directions to the police touching the arrest in order to establish a prima facie case against the defendant. If it is shown that the defendant made a charge against the plaintiff, and the surrounding circumstances and the conduct and acts of the defendant raise a fair and reasonable presumption that a wrongful act was ordered or directed to be done by the defendant, there is enough to

call upon him to answer the charge and rebut the presumption. The burden of proof upon the proposition as to the arrest being directed or procured by the defendant is upon the plaintiff. She must establish this proposition by a fair preponderance of the evidence. If, to your minds, she has failed to do that, or the evidence upon this point is evenly balanced, so that it does not preponderate in favor of either one side or the other, your verdict will be in favor of the defendant. If you find from the whole evidence that the defendant complained to the police of the robbery of the jewels in his house, and stated various circumstances of suspicion which had come to his knowledge, and the police officer made inquiry into those circumstances, and on his own authority arrested the plaintiff, and took her to the police station, the defendant is entitled to your verdict. And I now charge you, at the request of the defendant, as follows:

"First. That the defendant cannot be held in damages in this action unless he arrested the plaintiff himself, or instigated, directed, or procured Richards to do so." "Fifth. That mere advice to the plaintiff to go with the officer did not constitute such participation in his act as to make the defendant liable. Sixth. That if the defendant laid the whole matter before the police authorities of Newport, and the officer, Richards, in the discharge of his duty, and on his own responsibility, made the arrest of the plaintiff, the defendant is not liable for his act." "Ninth. That, even if the jury should find there was an arrest, yet the defendant is not responsible unless he procured it, caused it, counseled or advised it, or participated in the act. Tenth. To make him liable, he must have required the officer to make the arrest, or assisted him in making it." "Eighteenth. If the defendant, on learning of the loss of his daughter's jewels, merely told all the facts and his suspicions to the police of the city of Newport, and the police officers of that city, in the exercise of their proper authority and discretion, concluded to and did arrest the plaintiff, the defendant is not responsible to her in this action. Nineteenth. Every one is answerable for specifically directing the arrest or imprisonment of another; but one is not answerable for acts done upon his information or suggestion by an officer of the law, if they are done not purely as ministerial acts, but in the exercise of the officer's proper authority or direction. Twentieth. If the defendant participated in any arrest of the plaintiff, he is liable as principal; but if he merely told his suspicions to an officer, and the latter arrested on his own responsibility, he is not liable at all in this action."

I charge you, at the request of the plaintiff, in the following modified form:

"I charge you that if you find from the evidence that the detective, Richards, did arrest the plaintiff, and that the defendant was present, and aided and encouraged the arrest, then, in that event, the defendant will be guilty of an arrest."

Now, gentlemen, if you find that the defendant did direct or procure plaintiff's arrest, you will next inquire and determine whether the arrest was without probable cause. The burden of proving the want of probable cause is upon the plaintiff. It is undisputed that if the plaintiff was arrested it was done without a warrant. As a general principle, no person can be arrested or taken into custody without a warrant; but if a felony or a breach of the peace has, in fact, been committed by the person arrested, the arrest may be justified by any person, without warrant, whether there was time to procure a warrant or not. Yet if an innocent person be arrested upon suspicion by a private individual, such individual is not ex-

cused unless such offense has, in fact, been committed, and there was reasonable ground to suspect the person arrested. The proofs show that a felony was committed in the house of the defendant at Newport, R. I., on or about the 17th of August, 1893; jewels belonging to one of the daughters of the defendant, and valued, according to the testimony of the defendant, at from three to five thousand dollars, having been taken therefrom. If you find that the plaintiff was arrested at the defendant's procurement or direction, you will next ascertain and determine whether there was reasonable ground to suspect the plaintiff. In other words, did the defendant have probable cause to warrant him in his belief that plaintiff had committed the robbery? Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged. It does not depend upon the guilt or innocence of the accused, or upon the fact whether a crime has been committed. A person making a criminal accusation may act upon appearances; and, if the apparent facts are such that a discreet and prudent person would be led to the belief that a crime had been committed by the person charged, he will be justified, although it turns out that he was deceived, and that the party accused was innocent. Public policy requires that a person be protected who in good faith and upon reasonable grounds causes an arrest upon a criminal charge; and the law will not subject him to liability therefor. But a groundless suspicion, unwarranted by the conduct of the accused, or by facts known to the accused when the accusation is made, will not exempt the latter from liability to the innocent person for damages causing his arrest. And I deem it important at this point to charge you, at the request of the plaintiff:

"Fourth. I charge you further that it is not a capricious or hasty opinion upon the part of the defendant that would entitle him under the law to have plaintiff arrested. He must go further, and show to the jury that he acted upon such information, facts, and circumstances as would lead a reasonably prudent man to suspect that the plaintiff was connected with the crime."

And I charge you at the request of the defendant:

"Third. A felony having been committed in this house, the defendant, is not liable to the plaintiff in damages if he had reasonable ground or probable cause to suspect that she was in some way concerned in the commission of the crime."

The defendant has given you certain reasons why he suspected the plaintiff in this action, and they were enumerated upon cross-examination, and read again upon the amendment of the answer. Perhaps, in order that I may not be charged with injustice, I had better briefly state them again: That the other servants were old servants; that when the defendant first met the plaintiff she wore an unusual kind of jewelry; that she was the custodian of the jewels; that the defendant was never robbed before; that it was known to the plaintiff that he and his family would be away on the day the robbery took place; that neither the silverware nor the other pins which were in the room of his daughter were taken; that there was no evidence of disorder in the room; that other articles of

greater value which might have been taken were not; that the plaintiff represented Steers as a half-brother, when, in fact, he was not such; that she went out walking at an unusually early hour in the morning with a married man, whom she also represented as her brother; and that there was no explanation made by the plaintiff of the robbery, nor why she had not locked up the jewelry. The contention of the plaintiff is that the grounds or the facts and circumstances upon which the defendant based his suspicion are in conflict; in other words, that there is a conflict of evidence as to at least some of them, which I will now enumerate, as my memory serves me. She denies that she was the custodian of the jewelry. She denies that she went out walking with Steers at an unusually early hour in the morning. She says that she did so at broad daylight. She says that she did make an explanation of the robbery. She further said that her meeting with Steers was in the daytime, open, and without secrecy. Probably there are other circumstances, to which your attention has been called by the able and eloquent counsel for the plaintiff, which are in conflict with the defendant's theory, and I leave it to you to say, gentlemen, from the entire evidence, whether or not the facts embraced in the defendant's answer, as amended on this trial, and testified to by him, have been actually established by the evidence. If you find that such facts as are set forth in the defendant's answer, as amended upon this trial, exist, I charge you that the same constitute probable cause, and, in case you find them to be facts, your verdict will be for the defendant. I charge you here, at plaintiff's request, her first proposition:

"First. If you believe from the evidence that the plaintiff was arrested, and that the defendant was instrumental in having her arrested, and that the plaintiff, up to the time of her arrest, uniformly bore a good reputation for honesty and integrity, that defendant knew her reputation to be such up to the time of her arrest, then that fact is a proper one to be considered by the jury, in connection with all other evidence in the case, in determining whether or not defendant had a probable cause to believe, and did believe in good faith, that the plaintiff was guilty of the crime charged against her."

And I charge you:

"Fifth. If you find from the evidence that the defendant omitted to make such inquiry and investigation of the conduct of the plaintiff as would suggest itself to a reasonably prudent man, and that such investigation would have discovered the fact that the plaintiff had no connection with the larceny or burglary, then the defendant cannot be absolved upon the ground of probable cause to believe the plaintiff guilty."

And I charge you in this connection, at the request of the defendant, as follows:

"Fourth. That in determining whether the defendant had such probable cause or reasonable ground to suspect that the plaintiff was concerned in the commission of the crime the jury may consider the fact that the plaintiff had been recently engaged, while the other servants of defendant had been long with him; that she had the general custody and control of the jewels which were stolen; that the defendant's family, including the owner of the jewels, were absent on the day when they were stolen; that there was no evidence that the house had been entered by a stranger; that the bureau from which the jewels were taken showed no disorder; that other jewelry and property of value was left on the bureau and in the room undisturbed; that no one had any right of access to the room of the defendant's daughter except

the plaintiff and one other servant, who had been with the family several years; that the plaintiff left the house in the afternoon without locking the bureau or the room; that the tracks on the roof which the plaintiff pointed out as evidence of the entrance of a stranger were shown to have been there long before the jewels were stolen; and that the plaintiff was having constant meetings in the morning with a married man, whom she had represented to be her brother."

You may take these facts into consideration, if you find them to be such from the entire evidence.

I charge you further, at the request of the defendant:

"Twenty-First. If the jury believe that the plaintiff was a new servant of the defendant; that all of his other servants had been long with him, or had come so recommended that he knew all about them; that the plaintiff, as the maid of the defendant's daughter, had general care and custody of all her property, and of the furniture in which the lost jewels were kept; that the larceny of the jewels occurred when all the family were absent, but when the plaintiff was in or about the premises; that there were no evidences that the house had been entered by a stranger; that there were no evidences of disorder about the room of defendant's daughter, such as burglars usually leave, and no evidence of disorder at all in the room; that other valuable property on the top of the bureau and in the drawer where the jewels were kept was left untouched; and if you further find that the plaintiff gave no satisfactory explanation as to the probable way in which the jewels disappeared, and that the defendant, after the loss of the jewels, learned that the plaintiff was in the habit of continually meeting a man very early in the morning, and at other times, whom she falsely represented to be her brother, —that, even if the defendant directed the arrest of the plaintiff, or participated in it, he had probable cause to suspect that the plaintiff was in some way concerned in the commission of the crime, and cannot be held liable to the plaintiff in this action."

That request is slightly altered.

"Twenty-Second. That if the jury, and other reasonable men, under similar circumstances, would have suspected the plaintiff of being in some way concerned in the larceny of the jewels, then they cannot find a verdict for the plaintiff in this action.

"Twenty-Third. That if the jury believe that reasonably careful men would have entertained the suspicion concerning the plaintiff's connection with the loss of the jewels which the defendant did on August 24, 1893, and testified to by him, then they must find a verdict for the defendant."

I charge you the twenty-fourth in the following modified form:

"Twenty-Fourth. Defendant claims there was every precaution to save plaintiff's feelings and that there was no malice. You may take into consideration, with respect to these contentions, the following undisputed facts, viz.: That there was a covered carriage which conveyed the plaintiff to and from the police station; that there was no entry in the blotter of the arrest of the plaintiff at the police station, or alleged arrest; and that the detective, Richards, and the captain were not in uniform."

I charge you the twenty-fifth:

"The knowledge of Richards was the knowledge of the defendant, inasmuch as the acts of Richards are claimed to have been the acts of the defendant.

"Twenty-Sixth. If the defendant had reasonable cause to suspect plaintiff of the commission of the felony, he would have failed in his duty if he had not informed the police authorities."

Before submitting this case for your final deliberation, permit me to impress upon you the importance of the following considerations: It is my duty to instruct you as to the law which you are to apply to the facts as you shall find them; for you are the sole judges of

the facts, and your guide as to the law of the case is the charge of the court, and not the statements of counsel. When the plaintiff rested, the defendant moved for a dismissal of the complaint, which was denied; and upon the close of the entire case the defendant renewed that motion, and also made a motion for a direction of a verdict in his favor, which motions were denied. I charge you, gentlemen, that the denial of these motions is not to be taken by you as any indication that I think the plaintiff is entitled to recover. It is simply a ruling of the court that she has presented such a state of facts as requires a consideration of them by a jury. While the law makes the parties litigant in this case competent witnesses, yet you have a right to take into consideration their situation and interest in the result of your verdict, and the circumstances which surround them, and you may give to their testimony only such weight as you deem it to be fairly entitled to. In determining the issues in this case, you are to carefully weigh the evidence, and, if you can reconcile the apparently conflicting statements of the witnesses, it is your duty to do so, and determine which side you believe has the better recollection of the facts and circumstances. You must decide this case upon the evidence as you recollect it; and you are not to take the counsel's nor the court's statement thereof unless it is in accord with your recollection. You have heard the contention of the respective parties to this cause, as ably and eloquently presented by their counsel; and the strict attention paid by you to the case will, I am convinced, enable you to consider the evidence properly, and come to a safe and prudent result. These considerations, if they stood alone, would, in my opinion, justify a trial judge in refraining from making any comment upon the testimony; but as it might also with propriety be said by either or both of the parties litigant that portions of the evidence pertinent to their side of the case have been omitted, or undue prominence given to unimportant facts, or that parts of the evidence had been erroneously stated, I will therefore not make any comment on the evidence beyond that already made.

If you find that the plaintiff's arrest was for probable cause, your verdict will be for the defendant. Your verdict will likewise be for the defendant unless you find affirmatively that the plaintiff was arrested at the direction of the defendant, and without probable cause. Unless you find all of these propositions in favor of the plaintiff, your verdict will be for the defendant. If, however, you find from the whole evidence, and under these instructions, that the plaintiff is entitled to recover, you will proceed to the consideration of the question of damages. In that event you may give what in law are called "compensatory damages"; that is, such damages as will compensate her for the injury to her feelings and anxiety of mind. And if you further find from the evidence that such arrest was maliciously and wantonly made, then, in assessing the plaintiff's damages, you may give what in law are called "exemplary" or "punitive" damages; that is, such damages as will not only give plaintiff compensation for the damages actually suffered by her, but will also afford a lesson—an example—to others in like cases.. And if any material circumstance has been shown to your satisfaction which

will, in your opinion, mitigate the damages against the defendant, you may take that into consideration.

I charge you, at the request of the plaintiff, as follows:

"Fourteenth. If you find for the plaintiff in this case, you have a right to consider, as an element of damages in fixing the amount of your verdict, the mortification, humiliation, and shame suffered by the plaintiff by reason of her arrest and imprisonment, if you find that there was such. Fifteenth. If you find for the plaintiff upon all the facts in the case, as I have charged you, you have a right to assess punitive damages,—that is, such damages as would punish the defendant for his action in aiding and abetting in the arrest of the plaintiff,—provided such is proved to be the fact, and provided, further, that he acted without probable cause. Sixteenth. I charge you that you have the right to infer malice upon the part of the defendant, if you find from the proof that he had no probable cause to suspect the plaintiff."

And at this point I think it better to read again, in connection with this question of malice, the defendant's twenty-fourth request, as modified:

"The defendant claims that there was every precaution to save the plaintiff's feelings, and that there was no malice. In passing upon these questions you may take into consideration these undisputed facts: that there was a carriage which conveyed the plaintiff to and from the police station, and there was no entry in the blotter at the police station of the alleged arrest of the plaintiff, and that the detective, Richards, and the captain were not in uniform."

And I charge you, at the request of the defendant:

"Twenty-Seventh. As a matter of law an employer is under no obligation to give a servant quitting or when discharged from his employment any statement, reference, or certificate whatever as to character, capability, honesty, or morality, or on any other subject; and the refusal to give or the withholding of any such statement, reference, or certificate does not create any right of action or claim for damages whatever against the employer."

Unless you find from the entire evidence, and under the instructions of the court, that the plaintiff is entitled to recover, you cannot and must not award anything to her out of sympathy. You have no right to render a verdict against the defendant merely because he may have sufficient means with which to pay any judgment entered thereon. On the other hand, you should not withhold justice from the plaintiff merely because she is poor and an alien. You must decide this case precisely as you would or ought to do between two individuals who are strangers to you, and neither sympathy nor prejudice should be allowed to influence your verdict in the slightest degree. You will therefore without fear, favor, sympathy, prejudice, or passion render such a verdict on all the facts and circumstances of the case as you, in the exercise of a sound judgment on the facts of the case, guided by the law as laid down by the court, consider the case entitled to. Before you retire, I wish to thank you most heartily for the strict attention you have paid to the proceedings, and for the exemplary patience exhibited by you.

The jury thereupon retired and returned a verdict in favor of the defendant.