### TOBIN v. BELL et al.

(Supreme Court, Appellate Division, Fourth Department. May 13, 1902.)

**1. False Imprisonment—Evidence—Sufficiency.**
In an action for false imprisonment, plaintiff testified that, while looking at a ring in defendant's store, an employé approached her and accused her of stealing the ring, and asked her where she had obtained a new pocketbook she had with her, and detained her against her will in the office. A clerk not in defendant's employ at the time of trial testified that she discovered the ring plaintiff had been trying on was gone from the case, and notified the office; and another clerk, not at the time of trial in defendant's employ, testified to hearing plaintiff say to the employé who spoke to her about the matter, that she did not mean to steal, but only to wear, the ring. The employé testified that, meeting plaintiff some distance from the jewelry counter, he asked her to go to the office, and she went, and, after denying the theft, produced the ring, and begged him not to prosecute, and that she remained voluntarily

in the office. It appeared she said she had purchased the pocketbook for 75 cents, but defendant testified it was a new one, selling for $3.50, and contained only a slip bearing the price. Plaintiff testified she had $25 in the book. *Held*, that a verdict for plaintiff was against the weight of the evidence, which was strongly against any unlawful detention.

**2. ARREST BY PRIVATE PERSON—MISDEMEANOR.**

Under Code Cr. Proc. § 183, providing that a private person may arrest another for a crime committed or attempted in his presence, a private person may arrest for a misdemeanor committed or attempted in his presence.

**3. SAME—FALSE IMPRISONMENT—DEFENSES—TAKING ACCUSED TO MAGISTRATE.**

Code Cr. Proc. § 183, provides that a private person may arrest for a crime committed or attempted in his presence. Section 185 provides that a private person who has arrested another for a crime must, without delay, take him before a magistrate, or deliver him to a police officer. *Held*, in false imprisonment, that the fact that defendant detected plaintiff committing a crime, and made the arrest as authorized by section 183, was no defense, where plaintiff was not taken to a magistrate or delivered to an officer.

McLennan and Williams, JJ., dissenting.

Appeal from trial term, Cattaraugus county.

Action by Bridget Tobin against Charles E. Bell and others. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Allen J. Hastings, for appellants.
Henry Donnelly, for respondent.

SPRING, J. This is an action for false imprisonment. The defendants Bell are the proprietors of a department store in the city of Olean, and the defendant Johnson is in their employ. The plaintiff, a married woman, went to their store on Monday, December 19, 1899, about noon, ostensibly to exchange a pair of rubbers and have buttons sewed on some shoes she had purchased at the store the preceding Saturday. She looked at the Christmas goods throughout the store, and, at the jewelry counter, tried on a ring. Her version of the occurrence is that while she was doing this the defendant Johnson came up to her and accused her of stealing the ring. She denied it, and returned it to the tray on the counter. Mr. Johnson then ordered her to go to the office in the store, which she did, and was then charged by the defendants with stealing, and was told she must pay $25, as goods to that amount had been stolen from the store. The plaintiff had a new pocketbook with her, and the defendant Johnson asked her where she got it, and she said at their store on the Saturday evening previous, paying for it 75 cents. A lady clerk was called up, and stated that she did not sell the pocketbook to the plaintiff. The plaintiff further testified:

"I wanted to go home, and they wouldn't let me leave the office; and after a while they let me go, and they wouldn't give me my pocketbook or rubbers. He wouldn't give me the package. Mr. Johnson said, 'You may leave your money, and it will be safe.' I had $25 and my receipt for my grocery bill. I said in reply, 'No, sir,' and I took my money and went."

Again she testified that Mr. Johnson directed her to stay in the office, saying, "You sit down there, and we will have an officer here," and she remained in the office about an hour. Continuing, she said:

"I was kept in the office an hour, sitting down on the chair, when I got sick and went upstairs, and came back to the office. Mr. Johnson was at the door, and said, 'Come back in here.' I don't know how long I sat there after I came back from upstairs."

The defendants said they would send an officer to search her house. A warrant for that purpose was obtained, and an officer went to her house that afternoon, but made no search.

If the plaintiff's version of the transaction is to be credited, the jury were warranted in finding that there was no reasonable ground for her detention, and that she was unlawfully deprived of her liberty, which constitutes the essence of the action. Add. Torts (Wood's Ed.) par. 798; Limbeck v. Gerry, 15 Misc. Rep. 663, 39 N. Y. Supp. 95. "The gist of such an action is an unlawful detention." Burns v. Erben, 40 N. Y. 463–466. The story of the plaintiff was very pointedly disputed by the defendants and their witnesses. Jennie Shaner, who was then in the employ of Bell Bros., testified that she had charge of the sterling silver near the jewelry counter, and observed the plaintiff, after trying on a ring, putting it in the case, saying it was too large, then going away, and afterward returning to the ring counter and inspecting the ring again; that she then went toward the shoe counter, and the witness discovered that the ring which plaintiff had been trying on was gone, and called the attention of Miss Myers, who was in charge of the rings, to the circumstances, and that lady also noticed the ring was not there and immediately went to the office, and shortly afterwards the witness observed Mr. Johnson talking with the plaintiff 30 feet from the ring counter. Miss Myers, after testifying that she observed the plaintiff inspecting and handling the four rings on the tray, and that Miss Shaner spoke to her concerning the ring, described what occurred in this way:

"I looked at the case, and there was only three rings remaining; and then I reported the case, at the office window, to Mr. Johnson. There were four rings in the case when I placed it on the counter, not five minutes before that. There was no other customer near the counter, or anybody else that I saw have the case or look at the rings, besides Mrs. Tobin, between the time I put it on the counter and the time Miss Shaner called my attention to it. After Mr. Johnson came out, I did not hear anything said. I heard Mrs. Tobin say, 'I didn't intend to steal it, but just wear it awhile.' She was near the hosiery counter, down near the office, when she said that."

These clerks, who had not been in the employ of the defendant for two years prior to the trial, contradict the plaintiff, as she had testified that Mr. Johnson directed her to go to the office while she was at the ring counter trying on the rings; and their testimony not only is that she had left the counter, but under circumstances justifying the suspicion that she had stolen the ring. Mr. Johnson testified that, when apprised of what had occurred, he left the office, and overtook the plaintiff at the hosiery counter, 30 feet distant from where the rings were kept; and he continues his story:

"I stepped up to her and asked her if she wanted to pay for that ring. She said, 'I haven't got any ring.' I said, 'Come with me to the office;' and on the way to the office she took the ring either off her finger or out of her hand, and said, 'For God's sake, don't expose me for this thing.' We passed on from there to the office, and about that time Mr. Bell was going along on his way to dinner, as I remember it; and, as he approached the door to the private office, I said to Mr. Bell, 'Here is the woman who has been found with the ring in her possession.' He said, 'Is that so?' And I turned and looked at her and said, 'I am very sorry to hear anything of the kind.' She rose to her feet and said, 'Mr. Bell, I have a large family of children, and I don't want you to prosecute me.'" And again: "Then Mr. Bell said, 'We found this pocketbook in your possession, and the ring in your possession, and I don't know how much more you have taken.' He turned to me and said, 'How much does the stolen account amount to?' And I said, 'Something like $25.' Then I think Mr. Bell went in during this interval. He came around into the office and asked that question. And I think Mr. Bell turned around and went out, and I followed him, and he said to Mrs. Tobin: 'I don't know but what you have taken lots of things. We have had a good deal stolen. Maybe you have taken all of this. I don't know anything about.' But I don't recall what followed that now,—just this moment. There was something said about us searching the house. I think he spoke something about that he would have a search warrant."

The witness said that the plaintiff remained in the office voluntarily for about an hour, and no restraint was exercised over her; that she left the office twice, returning of her own accord. It appears that, when inquired of concerning the pocketbook, she said that she had purchased it at the store for 75 cents; and the defendant George Bell testified that the pocketbook was a new one, selling for $3.50, and contained a slip stating the cost price, and nothing else. The clerk, Miss Crocker, who was at that time identified by the plaintiff as the clerk who had sold her the pocketbook, denied this; testifying that it was one of the most expensive in the store, and that they were very infrequently sold. A pocketbook was produced on the trial, containing the cost price and a slip of paper, and identified by Johnson, Bell, and Miss Crocker as the one the plaintiff had at the time of the alleged arrest, and which since that time had been retained by the defendants. Mr. Bell corroborated the defendant Johnson, and testified that he was informed in the office that the plaintiff had stolen a ring, and she said:

"'Mr. Bell, now don't be hard on me. I am a poor lady, and I have got a family of nine or eleven children,' I think she said. She said, 'It is a little thing, and I hope you won't be hard on me.'"

Both testified that nothing was said about arresting her or sending for an officer. When the question of the pocketbook came up, she remained with apparent willingness,—certainly without restraint, —for the purpose of meeting Miss Crocker, who she claimed had sold her the pocketbook. As has been seen, the plaintiff testified that she had $25 in the pocketbook, which she took out, and that the defendants desired to retain this. The defendants deny that she had any money in the pocketbook, or produced any at all.

The verdict is clearly against the weight of the evidence. The plaintiff is unsupported in her story, and is contradicted by four witnesses, two of whom are disinterested. While actions of this kind, as a rule, are peculiarly for the jury to determine, yet when

the evidence is overwhelmingly against any unlawful detention, and tends very strongly to show that the plaintiff was the culprit, instead of the defendant, we are impelled to intervene to prevent the defendants being mulcted in damages unjustly.

In his instructions to the jury, the court stated that a private person may not arrest another for the commission of a misdemeanor. If the plaintiff was apprehended by the defendants in the act of committing or attempting to commit a crime, even though a misdemeanor, the arrest by them would be lawful. Code Cr. Proc. § 183; Athletic Club v. Wurster, 19 Misc. Rep. 443, 450, 43 N. Y. Supp. 703. In the present case, however, the defendants did not take the plaintiff before a magistrate, and the mandate of the statute is that this must be done without unreasonable delay. Code Cr. Proc. § 185. It may have been found, if there was any detention, that the plaintiff was arrested while attempting to steal the ring, and in the presence of the defendants; but, in order to avail themselves of this defense, they must have taken her to a magistrate. Pastor v. Reagan, 9 Misc. Rep. 547, 30 N. Y. Supp. 657, referred to approvingly in Snead v. Bonnoil, 49 App. Div. 330–335, 63 N. Y. Supp. 553. If the rule were otherwise, it might result in compounding offenses of this kind, and if the person is arraigned and discharged, that establishes his innocence, and, if held, it makes effective the justification of the conduct of the person making the arrest, and shows probable cause, unmistakably. The judgment should be reversed on the facts, and a new trial granted, with costs to abide the event.

Judgment reversed, and new trial granted, with costs to abide the event. All concur, except McLENNAN and WILLIAMS, JJ., who dissent.