### MILLS v. ERIE R. CO. et al.

(Supreme Court, Appellate Term.　December 16, 1908.)

**1.** LARCENY (§ 64*)—WEIGHT OF EVIDENCE—POSSESSION OF PROPERTY.

The possession of property recently stolen raises a presumption of guilt, and if unexplained, authorizes the jury to infer a criminal connection with its acquisition.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 170–178; Dec. Dig. § 64.*]

**2.** MALICIOUS PROSECUTION (§ 18*)—EVIDENCE—WANT OF PROBABLE CAUSE.

The rule that possession of property recently stolen raises a presumption of guilt, and, if unexplained, authorizes the jury to infer a criminal connection with its acquisition, obtains in an action for malicious prosecution on a charge of larceny, after an acquittal of such charge.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. § 31; Dec. Dig. § 18.*]

**3.** MALICIOUS PROSECUTION (§ 20*)—WANT OF PROBABLE CAUSE.

The innocence of the accused does not render the prosecutor liable, provided he acted upon an honest and reasonable belief in instituting the prosecution complained of.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. § 26; Dec. Dig. § 20.*]

**4.** MALICIOUS PROSECUTION (§ 71*)—ACTIONS—QUESTIONS FOR JURY.

Where the facts are undisputed and admit of but one inference, the existence of probable cause is a question of law for the court.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 161, 162; Dec. Dig. § 71.*]

**5.** MALICIOUS PROSECUTION (§ 18*)—WANT OF PROBABLE CAUSE.

The fact that plaintiff, an experienced Pullman car porter, when presenting for redemption railroad tickets recently stolen, and subsequently, at the police station, refused to explain his possession, and finally admitted that he received them from a janitress in the ticket office, who claimed that she had found them, was sufficient probable cause to justify a prosecution against him for larceny.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. § 31; Dec. Dig. § 18.*]

Appeal from City Court of New York, Trial Term.

Action by Walter A. Mills against the Erie Railroad Company and Frank H. Rice. From a judgment for plaintiff and the defendant Erie Railroad Company, the plaintiff and the defendant Rice appeal. Reversed as to the defendant Rice, and affirmed as to the defendant Erie Railroad Company.

These are cross-appeals, one by the plaintiff from so much of a judgment of the City Court of the city of New York as adjudges that the complaint be dismissed as against the defendant Erie Railroad Company, and the other by the defendant Frank H. Rice from so much of the same judgment entered upon the verdict of a jury as adjudges that the plaintiff recover of the said defendant the sum of $796.23, damages and costs, and from an order denying such defendant's motion for a new trial.

Argued before GIEGERICH, HENDRICK, and FORD, JJ.

Eidlitz & Hulse (Frederick Hulse, of counsel), for appellant Mills.
Stetson, Jennings & Russell (Allen Wardwell, of counsel), for appellant Rice and respondent Erie R. Co.

GIEGERICH, J. The action is to recover damages for an alleged malicious prosecution. The answer of each of the defendants was a specific denial of most of the essential allegations of the complaint.

In October, 1904, when the occurrences out of which this action arose took place, the defendant Rice was a ticket agent of the defendant Erie Railroad Company at its office in the ferry house at the foot of Chambers street, in the borough of Manhattan. About October 18th of that year two excursion tickets to Lackawaxen, Pa., were missing from the ticket case, which he suspected had been stolen because the sum which would have been realized upon their sale was also missing, and there was no record of the sale of the tickets, although the clerks employed the method regularly in use in the office of checking up the numbers of the tickets sold and the number of tickets in the case. Suspicion rested upon Irena L. Moorman, a colored janitress in the employ of the defendant railroad company, whose duty it was to take care of such ticket office. The defendant Rice, upon hearing that the tickets were missing, notified the general passenger agent's office, and gave the chief clerk the numbers of the tickets which were missing. It appears also that the stubs of the tickets were at first missing, together with the tickets themselves, but these were found several days afterwards alongside of the window. The defendant Rice let them remain there for a few days, and then he found them upon the window ledge, where they could be easily seen. On October 28th the plaintiff, a colored porter or hallman on one of the Fall River boats, presented the tickets for redemption at the office of the general passenger agent of the defendant railroad company at No. 21 Cortlandt street, in the borough of Manhattan. The tickets, though only good on the day of sale or the next day, were valid for redemption. When the plaintiff presented the tickets for redemption, he saw one Daniel M. Rabold, the cashier and ticket agent at such office, who, recognizing them as the missing tickets, told him that he would have to check them up as to the numbers and dates. Rabold went into the office and notified the chief clerk, one John F. Jack, who immediately went to the Second precinct police station, where he explained the matter to the officer at the desk, who sent two officers or "plain clothes men," as they were called, to the office in Cortlandt street, where they arrested the plaintiff. Upon hearing from the plaintiff that he had received the tickets from Irena L. Moorman, she was arrested at the Chambers street ticket office and taken to the police station, where, upon being questioned in front of the desk by the sergeant, among other things, said that she found the tickets. The plaintiff and the Moorman woman were taken to the City Magistrate's Court, First district, where the defendant Rice made a statement to the clerk, who drew the latter's affidavit, which he verified after the magistrate had passed upon the same. The magistrate thereupon examined the two prisoners, and held them in $300 bail each. The plaintiff and the Moorman woman were sent to the city prison in default of bail, and were tried on November 3, 1904, five days later. The Moorman woman was convicted and the plaintiff acquitted. The plaintiff then brought this action. The complaint was dismissed as

to the defendant railroad company, but the case was submitted to the jury as to the defendant Rice, and they found a verdict for the plaintiff. The latter has appealed from the judgment of dismissal, and the defendant Rice has. also appealed from so much of the judgment entered upon such verdict as affects him. Both defendants claim that it appears from the undisputed evidence that there was probable cause for the plaintiff's arrest and prosecution.

In Knickerbocker v. People, 43 N. Y. 177, 181, the court said: "Mere possession of another's property proves nothing, until it is shown how it was taken." In the present case there was ample evidence to show that the tickets in question had been stolen. The larceny of the tickets having thus been shown, it devolved upon the plaintiff to explain how he came into possession of the same. In Molloy v. Long Island R. R. Co., 59 Hun, 424, 426, 13 N. Y. Supp. 382, which was an action for malicious prosecution, the court laid down the rule "that the possession by a person of property recently stolen raises a presumption of guilt which may be considered by a jury, and, in the absence of explanation by such person, authorizes it to infer a criminal connection with its acquisition. People v. Weldon, 111 N. Y. 569, 19 N. E. 279." The plaintiff testified:

"Coming down to the 28th of October, 1904, the day of my arrest, I went to the Erie Railroad Company that morning at the Chambers street dock. My father was not there. I had fruit and some vegetables to send up home. I gave these packages to Irena Moorman, and asked her if she would deliver them to my father. She said 'Yes,' she would. She said: 'By the way, I want you to do me the favor.' 'All right, I will be glad to do one for you.' 'I have got two tickets I would like to have you redeem for me.' 'Certainly, where will I take them to?' 'On Cortlandt street general office.' Not thinking, I put them in my pocket, and went up to the office to have them redeemed. The gentleman at the desk asked me where did I get them from. I told him: 'I don't see how that concerns you any.' 'Well,' he said, 'those things have been missing for some time.' 'I know nothing about that.' 'Who gave· them to you?' 'A friend of mine.' 'Well, you had better tell me who your friend is. It will save you a lot of trouble.' 'Well, all right.' I told him just who I got them from. I told him I got them of the maid in the waiting room at Chambers street. He said, 'All right.' In the meantime two detectives came along and said, 'You come with us.' I said, 'What is the trouble?' 'Well, you will find out what the trouble is after a while.' 'All right.' I was taken down to the station house where the sergeant asked me some questions, and I told him the same as I told the man in the ticket office, and was taken in the back room and was told to wait. About half an hour or three quarters of an hour they called me out, and this woman was there—this Moorman girl who I told the sergeant at the desk and the ticket agent had given me the tickets. And the sergeant at the desk asked this woman, 'Do you know this man?' She said, 'Yes.' 'Did you give him two tickets?' 'Yes.' 'Did you give him two tickets?' 'I did.' 'Where did you get them from?' 'I found them.' Rice, the defendant, was there, and at the desk he asked me, I think, 'Did this woman give you these tickets?' I said; 'Yes; she did.' 'All right.' "

Upon cross-examination the plaintiff further testified:

"She did not tell me where she got them [the tickets]. She said she found them, but did not say where, though. I knew she was employed by the railroad company. She didn't tell me where she found them."

Detective Liston testified, without contradiction, that he had an interview with the plaintiff, during the course of which he asked him

where he got the tickets from, and that he refused to answer, and that he was taken to the police station where the sergeant at the desk questioned him, "and he said he got them from a friend. After some persuasion, he finally admitted that he got them from this Moorman woman, who was janitress up in the Chambers street station of the Erie Railroad," and that, upon being informed of such facts, the defendant Rice made the charge.

Dr. Bishop, in his work on New Criminal Procedure (volume 2, § 746, p. 342), referring to the explanation which is required in order to overcome the presumption of guilt where stolen goods are found in the defendant's possession, says:.

"If such explanation appears to the jury reasonable, and it is not shown by the prosecutor to be false, its weight in the scale for him will be very considerable; but if it appears unreasonable, or especially if it is shown to be false, it will bear against him heavily."

Prof. Greenleaf, in his work on Evidence (volume 1 [15th Ed.] § 34), says:

"Possession of the fruits of crime recently after its commission is prima facie evidence of guilty possession; and if unexplained either by direct evidence, or by the attending circumstances or by the character and habits of life of the possessor, or otherwise, it is taken as conclusive."

While the acquittal of the plaintiff upon the criminal charge must be regarded as wholly exonerating him from the commission of the crime of which he was accused, this rule of presumption nevertheless obtains in a civil action of this character, as has been above shown by the quotation from the opinion of the court in Molloy v. Long Island R. R. Co. While it is true that the plaintiff made an explanation, yet, according to his own showing, it was made reluctantly, and, although he testified that the Moorman woman told him when she asked him to have the tickets redeemed that she had found them, he concealed such fact from those who questioned him as to how he came into the possession of the same, and no claim that they had been so found was made until the Moorman woman made a statement to that effect in the police station, as above shown. These circumstances, aside from the others proven at the trial (and of which the defendant Rice had information when he verified his affidavit in the criminal case), when considered in connection with the fact that the tickets were found in the plaintiff's possession shortly after their disappearance from the defendant railroad company's ticket office, were in themselves sufficient to justify a discreet and prudent person in the belief that the accused had committed the crime with which he was charged.

There is no analogy between the present case and one where a thief places personal property in the hands of another without disclosing to the latter the sources from which he received the same. Such is not the situation here. On the contrary, the plaintiff testified, as already stated, that he was told by the Moorman woman that she found the tickets in question. He knew that she was employed by the defendant railroad company which issued the tickets, and that the facts in relation to such tickets, including the ownership thereof, could easily have been ascertained upon mere inquiry at the ticket office where she was

employed. This he was not asked to do by the woman, who, on the contrary, requested him to go to the main office of the company and obtain the cash value of the tickets. He swore that from his former experience as a porter on the cars of the Pullman Car Company and from his employment as a hallman and porter on the Fall River Line of steamers at the time of his arrest that it was his duty whenever he found any articles belonging to any one to return them to the proper officers or employés of the company. Hence a sense of moral obligation should have prompted an inquiry at the railroad company's office with a view of finding the owner of the tickets, rather than an attempt to realize upon them. It should also be borne in mind that the mere circumstance that the tickets were claimed to have been found by the Moorman woman was notice to the plaintiff that, if she had any claim whatever to them, it would have been defeated by the appearance of the true owner thereof. He was also chargeable with notice that any attempt to appropriate the tickets under the circumstances I have detailed constituted the crime of larceny under section 539 of the Penal Code, which provides:

"A person, who finds lost property under circumstances which gives him knowledge or means of inquiry as to the true owner, and who appropriates such property to his own use, or to the use of another person who is not entitled thereto, without having first made every reasonable effort to find the owner and restore the property to him, is guilty of larceny."

Although the plaintiff may have been innocent of any intention to do wrong by lending his aid to the Moorman woman in attempting to collect for her the sum due upon a redemption of the tickets, which, as shown, were worthless for passage, but good for redemption, yet, in view of the circumstances disclosed, he laid himself open to the suspicion entertained by the defendant Rice that the plaintiff "was in some way working in conjunction with or in collusion with the Moorman woman." While the plaintiff may not, as testified by him, have been "thinking" when he started on his errand to the office of the defendant railroad company in Cortlandt street from its ticket office in Chambers street, it is evident from his testimony that he had some doubt about the propriety of it after he reached such Cortlandt street office; for he at first refused to tell the cashier from whom he received the tickets, and only told the name of the person who gave them to him after being told that by so doing he would save a lot of trouble. If he then believed that the Moorman woman rightfully came into possession of the tickets, why did he hesitate, even for an instant, to disclose her name?

It is argued in behalf of the plaintiff that, if he had been guilty of aiding or assisting the Moorman woman in stealing the tickets, he would not have the temerity to go to the railroad company's office for the purpose of redeeming them. While this may be perfectly true, the disinclination of the plaintiff while trying to redeem the tickets and subsequently at the police station to tell from whom he received them lends color to the suspicion that he was either attempting to shield the Moorman woman, or that he was acting in concert with her. What his purpose was in doing so has not been made to appear;

but, whatever may have been his motive, his conduct throughout the entire transaction was such as to invite the situation in which he unfortunately found himself, although innocent of the crime ·he was charged with having committed. Where, as here, a crime has been committed, the persons aggrieved as well as police officers should be encouraged rather than condemned for endeavoring to find the culprit, and therefore, if an honest mistake has been made, in good faith and upon reasonable grounds, in arresting a person upon what afterwards turns out to be a false charge, the law should not subject him to liability therefor. Burt v. Smith, 181 N. Y. 1, 73 N. E. 495; Limbeck v. Gerry, 15 Misc. Rep. 663, 39 N. Y. Supp. 95.

The language of the court in Burt v. Smith, supra, is pertinent. It was there said (page 6 of 181 N. Y., page 496 of 73 N. E.):

"An innocent person may be prosecuted unjustly and subjected to expense and disgrace with no right to call the prosecutor to account, provided he acted upon an honest and reasonable belief in commencing the proceeding complained of. Peace and good order exact this hardship from the individual for the benefit of the people at large, so that citizens may not be prevented by the fear of consequences from attempting to assert their own rights or to vindicate the cause of public justice by an appeal to the courts."

One cannot read the record in this case without being impressed with the utmost good faith of the defendants, and the defendant Rice testified, without contradiction, that he had no acquaintance whatever with the plaintiff before the matter arose, and that he bore him no ill will. There is no dispute as to the facts I have hereinbefore stated, and which were known to the defendant Rice when he made his affidavit before the magistrate.

As such undisputed facts admit of but one inference, the question of the existence of probable cause is one of law for the court, rather than one of fact for the jury (Rawson v. Leggett, 184 N. Y. 504, 77 N. E. 662, and cases there cited), and my conclusion therefore is that these undisputed facts furnished probable cause for the prosecution of the plaintiff upon the criminal charge made against him. As was said in Burt v. Smith, 181 N. Y. 6, 73 N. E. 496:

"Probable cause does not necessarily depend upon the actual guilt of the person prosecuted, but may rest upon the prosecutor's belief in his guilt when based on reasonable grounds. One may act upon what appears to be true, even if it turns out to be false, provided he believes it to be true and the appearances are sufficient to justify the belief as reasonable."

The principles of the case of Tyson v. Bauland Co., 186 N. Y. 397, 79 N. E. 3, 9 L. R. A. (N. S.) 267, are peculiarly applicable to the facts of this case. There it appeared that a satchel containing $25 in money and other articles belonging to the defendant Gillin was stolen from a counter or table in the Bauland Company's department store in Brooklyn while she was shopping therein; that she reported the loss to a floor walker, who advised her to station herself at the main entrance to the store; that in the meantime a strange woman accosted the plaintiff, who was also shopping in the store, and handed her the stolen satchel, with the request that she give it to the owner, who she said would be found at the door; that at the door the defendant Gillin saw the satchel in the plaintiff's hands, and, finding upon opening it that

the money was gone, complained to the defendant O'Reilly, a special patrolman detailed to do duty in said store, who took the plaintiff into custody; that at the police station the defendant Gillin made a complaint charging the plaintiff with the crime of grand larceny; that after an examination the plaintiff was admitted to bail to await the action of the grand jury; and that both the defendant Gillin and the plaintiff subsequently testified before the grand jury, but no indictment was found. The case was left to the jury, who found in favor of the plaintiff and the judgment on that verdict was unanimously affirmed by the Appellate Division, although it allowed an appeal to the Court of Appeals. 106 App. Div. 612, 95 N. Y. Supp. 1164. See, also, 186 N. Y. 397, 79 N. E. 3, 9 L. R. A. (N. S.) 267. The latter court, in reversing the judgment, through Cullen, Ch. J., at page 400 of 186 N. Y., page 4 of 79 N. E. (9 L. R. A. [N. S.] 267), said:

"Possession of the stolen property by the respondent, notwithstanding her explanation, being sufficient to support a conviction, it cannot be said that it was insufficient to warrant a prosecution."

The facts of the present case afforded much stronger grounds for believing the plaintiff to have been guilty of the crime charged than did the facts in the case last cited, since, as above shown, the present case contains elements other than the mere possession of the stolen property by the plaintiff.

It logically results from the foregoing views that it was error for the trial court to submit the case to the jury so far as the defendant Rice was concerned, and that the court was right in dismissing the complaint as to the defendant railroad company.

The judgment in so far as it awards damages to the plaintiff against the defendant Rice should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event, and, in so far as it dismisses the complaint as against the defendant Erie Railroad Company, should be affirmed, with costs. All concur.