ALFRED H. BURT et al., Respondents, *v.* WILLIAM W. SMITH, Appellant.

1. MALICIOUS PROSECUTION. A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed and which finally ends in failure.

2. PROBABLE CAUSE. Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.

3. WHEN ORDER GRANTING INJUNCTION PENDENTE LITE IS PRIMA FACIE EVIDENCE OF PROBABLE CAUSE IN ACTION FOR MALICIOUS PROSE-CUTION — BURDEN OF PROOF. An order of the United States Circuit Court granting an injunction *pendente lite* in an action to recover damages for an alleged infringement of statutory trade marks and for general relief for infringement of common-law rights, although reversed upon appeal and the complaint subsequently dismissed upon the merits, is not conclusive evidence of probable cause in a subsequent action for malicious prosecution brought by the defendants in the former action against the plaintiff therein, because it was not final but merely adjudicated for a temporary purpose in order to preserve the subject of the action; it is, however, *prima facie* evidence thereof and the burden of proof rests upon the plaintiff to overcome its effect.

4. INSUFFICIENCY OF EVIDENCE TO OVERCOME EFFECT OF ORDER. The evidence examined and held that the plaintiffs' own testimony showed that the defendant had probable cause to commence the former action and pro-cure the injunction and, therefore, a nonsuit was properly granted by the trial court.

*Burt* v. *Smith*, 84 App. Div. 47, reversed.

(Argued January 30, 1905; decided February 21, 1905.)

1

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 12, 1903, sustaining plaintiffs' exceptions ordered to be heard in the first instance by the Appellate Division, after a nonsuit at a Trial Term and granting a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James L. Quackenbush, George P. Keating* and *Milton A. Fowler* for appellant. The letters " S. B." were a legal trade mark, and Mr. Smith had probable cause to believe that he had a good cause of action for the violation of it. (Brown on Trade Marks, §§ 84, 89, 212, 234, 235 ; *Moet* v. *Pickering,* L. R. [6 Ch. Div.] 770 ; *Hall* v. *Barrows,* 4 De G., J. & S. 150 ; *Giron* v. *Gartner,* 47 Fed. Rep. 467 ; *Godillot* v. *A. G. Co.,* 71 Fed. Rep. 873 ; *Godillot* v. *Harris,* 81 N. Y. 263 ; *Frank* v. *Sleeper,* 150 Mass. 583 ; *Cartier* v. *Carlisle,* 3 Beav. 292 ; *S. Mfg. Co.* v. *Bert,* 163 U. S. 205 ; *Vulcan* v. *Myers,* 139 N. Y. 364 ; *Lockwood* v. *Bostwick,* 2 Daly, 521.) The decree of the Circuit Court of the United States that there was an infringement on the registered trade mark and unfair competition is sufficient evidence of probable cause for the prosecution of the suit to make out a complete defense to this action for malicious prosecution. (*C. C. L. S. Co.* v. *Butchers' Union,* 120 U. S. 141 ; *Mark* v. *Hyatt,* 135 N. Y. 306 ; *Short & Co.* v. *Spragins & Co.,* 104 Ga. 628 ; *Clements* v. *O. E. A. Co.,* 69 Md. 461 ; *Hartshorn* v. *Smith,* 104 Ga. 235 ; *Griffiths* v. *Sellers,* 2 D. & B. 429 ; *Holiday* v. *Holiday,* 123 Cal. 26 ; *Morrow* v. *W. & W. Co.,* 163 Mass. 349 ; *Denewahy* v. *Woodsum,* 100 Mass. 195 ; *Whitney* v. *Peckham,* 15 Mass. 243 ; *Parker* v. *Farley,* 10 Cush. 279.)

*Norris Morey* for respondents. The granting of the temporary injunction by Judge COXE was not conclusive that the suit had been begun with probable cause. (*Lawton* v. *Green,* 5 Hun, 157 ; *Palmer* v. *Foley,* 71 N. Y. 106 ; *Mark* v. *Hyatt,* 135 N. Y. 306 ; *Russell* v. *Farley,* 105 U. S. 433 ; *Myers* v.

*Block,* 120 U. S. 206 ; *Bump* v. *Betts,* 19 Wend. 421 ; *Broun-stein* v. *Sahlein,* 65 Hun, 366 ; *Willard* v. *Holmes,* 142 N. Y. 492 ; *Wass* v. *Stephens,* 128 N. Y. 123 ; *Whipple* v. *Fuller,* 11 Conn. 582 ; *Closson* v. *Staples,* 42 Vt. 209.) Upon the whole of the evidence produced by plaintiffs the allegation of want of probable cause was well and fully established ; in the most favorable view to appellant, he could only have been entitled to ask that the evidence be submitted to the jury. (*Heyne* v. *Blair,* 62 N. Y. 19 ; *Fagnan* v. *Knox,* 66 N. Y. 527 ; *Hazzard* v. *Flury,* 120 N. Y. 223 ; *Wass* v. *Stephens,* 128 N. Y. 123, 127 ; *Scott* v. *D. S. C. Co.,* 51 App. Div. 321 ; *Owens* v. *N. R. C. L. Co.,* 38 App. Div. 53 ; *Canal Co.* v. *Clark,* 13 Wall. 311 ; *U. S.* v. *Braun,* 39 Fed. Rep. 775 ; *Knowdler* v. *Glanger,* 55 Fed. Rep. 895 ; *McLean* v. *Fleming,* 96 U. S. 245 ; *Meneely* v. *Meneely,* 62 N. Y. 427 ; *Pillsbury* v. *Pillsbury,* 64 Fed. Rep. 841 ; *B. C. Co.* v. *Meyer,* 139 U. S. 540.)

VANN, J. This is an action for malicious prosecution brought under the following circumstances : In 1874 the defendant, William Smith, and his brother Andrew, as copartners, began to manufacture cough drops at the city of Poughkeepsie and used the letters " S. B." indicating " Smith Brothers," their firm name, as a trade mark, upon the drops and packages. In January, 1892, they procured the registration of a trade mark under the statutes of the United States, the essential feature of which, as stated in the application therefor, " consists of two bust portraits of male figures representing the Smith Brothers, the registrants." During the same year they obtained another certificate of registry, the essential feature of which " consists of the letters ' S. B.' "

In 1891 the plaintiffs, who are copartners under the name of Burt & Sindele, began the manufacture of cough drops in connection with a confectionery business carried on by them in the city of Buffalo. The next year they adopted a package with a label designed by the United States Printing Company and used the initials of their firm name, " B. & S." both

upon the label and the drops to indicate the source of manufacture. At first their sales were small, but after advertising extensively they increased rapidly and the business finally became profitable.

In 1894 Andrew Smith, one of the Smith Brothers, died and the defendant succeeded to the business of the firm, both as surviving partner and by assignment from the executors of the decedent. In 1895 he commenced an action in the United States Circuit Court against the present plaintiffs, Burt & Sindele, to recover damages for an alleged infringement of said trade marks and asked for an injunction restraining them, both temporarily and permanently, from infringing the same. The bill of complaint set forth at great length facts and circumstances tending to show that Burt & Sindele had infringed both of said trade marks and had deceived the public by inducing the belief that their cough drops were made by the Smith Brothers. General relief was demanded for infringement of the common-law rights as well as technical relief for infringement of the statutory trade marks. Upon affidavits and notice Smith moved before the United States Circuit Court for the northern district of New York for a temporary injunction in accordance with the prayer of the bill. The defendants appeared and read numerous affidavits in opposition, whereupon the court granted an injunction *pendente lite* without requiring any security. Upon appeal to the United States Circuit Court of Appeals the order granting the preliminary injunction was reversed upon the ground that the use of the combination " B. & S." was no infringement of the statutory trade mark for the two letters " S. B." It was also held that the Federal court could take jurisdiction only of the question whether the registered trade marks had been infringed, and that it could not assume jurisdiction of the action so far as it was based upon "similarity in form, size and color of the drops, in the arrangement of the package, in the text and style of the directions for use, and other details tending to show an intent to deceive the purchasing public," because both of the parties were residents of the same state.

Subsequently and on the 3rd of February, 1896, the bill of Mr. Smith was dismissed by default, but still, as the record states, "upon the merits," with costs. This action was thereupon commenced by Burt & Sindele, the defendants in the injunction suit, against William Smith, the plaintiff therein, to recover damages for malicious prosecution. Upon the trial a nonsuit was granted, no evidence having been introduced by the defendant, but the plaintiff's exceptions were ordered to be heard in the first instance by the Appellate Division, where they were sustained by a divided vote, and a new trial was ordered. The defendant appealed to this court and gave the stipulation required by law.

A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure. An action for malicious prosecution is usually based upon an arrest in criminal proceedings, although it may be founded upon a civil action when commenced simply to harass and oppress the defendant. (*Pangburn* v. *Bull,* 1 Wend. 345; *Vanduzor* v. *Linderman,* 10 Johns. 106; *Bump* v. *Betts,* 19 Wend. 421; Cooley on Torts, 187; 19 Am. & Eng. Encyc. Law [2d ed.], 652.) Damages are rarely recovered, however, for the malicious prosecution of a civil action, unless person or property is interfered with by some incidental remedy, such as arrest, attachment or injunction. As public policy requires that all persons should freely resort to the courts for redress of wrongs, the law protects them when they act in good faith and upon reasonable grounds in commencing either a civil or criminal prosecution. While malice is the root of the action, malice alone even when extreme, is not enough, for want of probable cause must also be shown. Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. The want of probable cause does not mean the want of any cause, but the want of any reasonable cause, such as would persuade a man of ordinary care and prudence to believe in

the truth of the charge.    Probable cause does not necessarily depend upon the actual guilt of the person prosecuted, but may rest upon the prosecutor's belief in his guilt when based on reasonable grounds.    One may act upon what appears to be true, even if it turns out to be false, provided he believes it to be true and the appearances are sufficient to justify the belief as reasonable.    Belief alone, however sincere, is not sufficient, for it must be founded on circumstances which make the belief reasonable.    If probable cause exists, it is an absolute protection against an action for malicious prosecution, even when express malice is proved.    Thus an innocent person may be prosecuted unjustly and subjected to expense and disgrace with no right to call the prosecutor to account, provided he acted upon an honest and reasonable belief in commencing the proceeding complained of.    Peace and good order exact this hardship from the individual for the benefit of the people at large, so that citizens may not be prevented by the fear of consequences from attempting to assert their own rights or to vindicate the cause of public justice by an appeal to the courts.    (*Hazzard* v. *Flury*, 120 N. Y. 223; *Heyne* v. *Blair*, 62 N. Y. 19; *Farnam* v. *Feeley*, 56 N. Y. 451; *Carl* v. *Ayers*, 53 N. Y. 14; *Long Island Bottlers' Union* v. *Seitz*, 180 N. Y. 243; *Foshay* v. *Ferguson*, 2 Den. 617; Bishop on Non-Contract Law, 238; Bigelow on Torts, 194; Addison on Torts, 592; Newell on Malicious Prosecution, 252.)

The learned trial judge granted a nonsuit upon the ground that the order allowing the injunction was conclusive evidence of probable cause.    It has been held by the Supreme Court of the United States that a final judgment of a court of superior jurisdiction is conclusive evidence of probable cause, even if it is subsequently reversed on appeal, because public policy requires that judgments and decrees should " be invested with that force and sanctity which shall be a shield and protection to all parties and persons in privity with them." (*Crescent City Live Stock Co.* v. *Butchers' Union*, 120 U. S. 141.)    Some states have the same rule and in Georgia it has

been extended to an *ex parte* order granting an injunction and appointing a receiver *pendente lite*. (*Short & Co.* v. *Spragins, Buck & Co.*, 104 Ga. 628 ; *Spring* v. *Besore*, 12 B. Mon. 551, 555 ; *Griffis* v. *Sellars*, 4 Dev. & Bat. 176 ; *Whitney* v. *Peckham*, 15 Mass. 243 ; *Herman* v. *Brookerhoff*, 8 Watts. 240.) We find no case in this state where the effect of a judgment of a court of superior jurisdiction in this regard has been passed upon, although it has been held that a judgment rendered by a justice of the peace and subsequently reversed upon appeal is not conclusive, but only *prima facie* evidence of probable cause. (*Burt* v. *Place*, 4 Wend. 591 ; *Nicholson* v. *Sternberg*, 61 App. Div. 51.) In *Palmer* v. *Avery* (41 Barb. 290) the prevailing opinion went farther than the point decided, which was that the trial judge properly ruled that a judgment rendered by a justice of the peace, although reversed on appeal, is *prima facie* evidence of probable cause.

The injunction order in question was made by a court of superior jurisdiction, but it was not a final judgment. It was a temporary and provisional order resting in the sound discretion of the court and made to hold matters in *statu quo* until a trial on the merits could be had. It might be in force for a month or for years, but it could last only until final judgment was pronounced, and if preventive relief were then denied the injunction would fall of its own weight. Such an order differs from a final judgment in many respects. It has no element of finality. It is not a bar, except under peculiar circumstances. It is not conclusive evidence of the facts recited therein. It is not a writ of right but of discretion. If the facts make out a *prima facie* case, even if they are stoutly denied, the court frequently allows the injunction to stand, so that the property or right affected may remain unchanged until the trial. When granted after a hearing it is upon affidavits only, with no opportunity to confront or cross-examine the witnesses. Neither common-law evidence nor common-law methods are resorted to for the purpose of ascertaining the facts. The order may be modified or

vacated before final judgment by the judge who made it, and "its sole duty is to preserve the subject of the controversy in its then existing condition, without determining any question of right." A final judgment on the other hand is the end of the controversy and is as binding upon the court which made it as it is upon the parties. So long as it stands it settles the facts and the law of the case beyond controversy in any other proceeding between the same parties. Even if manifestly wrong, it must be respected and obeyed as if it were right, unless reversed upon appeal. It does not adjudicate for a temporary purpose in order to preserve the subject of the action, but finally and for all time. As an order for a temporary injunction requires but a *prima facie* case, we think it is only *prima facie* evidence of probable cause.

Probable cause is always a question of law for the court, to be decided outright if there is no conflict in the evidence, otherwise by instructing the jury as to what facts if found will establish a want of probable cause. In the case now before us the trial judge decided that probable cause existed and although he gave a wrong reason for his decision, we think his conclusion was right. The *prima facie* case made out by the order granting the injunction was not overcome by the other evidence introduced by the plaintiffs. The case presented by them in the state court, so far as the question of probable cause is concerned, differed in no controlling feature from that presented to the Federal court when the injunction was granted. Aside from the alleged infringement of the registered trade mark, there was still a *prima facie* case of infringement of the common-law trade mark. While some new facts were proved, it did not appear that they were known to the defendant when he applied for the injunction. With some difference in detail, there was a general resemblance in the size, color and appearance of the cough drops and packages used by the respective parties. The defendant had used his design in substantially the same form for nearly twenty years until it had become generally known as his property. It had been protected by the judgments and orders of both

state and Federal courts in many cases. The following instances, ranging from 1882 to 1894, show the method of infringing the use of the letters " S. B." on cough drops and packages, resorted to by other parties, which were restrained by the courts:

" S. P." used by J. Lutted & Co.; " T. C." used by Thomas Candy & Co.; " Smyth Brothers S. B. Cough Syrup," used by Vary & Neff; " Schmidt Brothers S. C. Cough Drops," used by George Schuster; " S. B." used by William & George Smith; " P. M." used by the firm of Peres & Mendelsohn; " B. B." used by Bird Brothers.

In each of these cases, as well as others not here mentioned but included in the moving papers before the Federal court, there was the usual effort to imitate in general appearance and yet vary in details easily overlooked by a purchaser.

The cough drops of the plaintiffs were substantially the same in size, color and form as those of the defendant. They were stamped on one side " B. & S." surrounded by a circle, and on the other " B. & S." with a bar above and below. Those of the defendant were stamped on one side " S. B." with a bar above and below, and on the other with a star of five points surrounded by a circle. The packages used by the parties looked alike but varied somewhat in design. On either end of the defendant's package was printed " 5 cents " and on one side " Price 5 cents," while upon either end of those of the plaintiffs was printed, " Price 5 cents." On the bottom of both was printed matter identical in some respects and conveying the same meaning in all respects. Other resemblances are as follows: " Cough B. & S. Drops," instead of " Cough Drops;" " The only genuine have the letters B. & S. stamped on both sides of the drop," instead of " S. B. stamped on each drop;" " The original cough B. & S. drops," instead of " Smith Brothers S. B. cough drops." There were points as to which there was no resemblance and the strongest evidence of an apparent intent to imitate was in the general appearance.

The defendant's registration of the letters " S. B." was

*prima facie* evidence of his common-law right. (U. S. Trademark Statute, approved March 3rd, 1881, § 7.) He presented to the Federal court the foregoing facts with other evidence tending to show an infringement of his rights by the plaintiffs, and so far as appears he presented it fairly and produced all he had bearing upon the subject. He gave notice of his application for an injunction and the plaintiffs appeared and opposed. After hearing both sides the court granted the injunction asked for, saying in its opinion, which is part of the record in the Federal courts although not in ours, that "in view of all the circumstances; in view of the almost literal copying of a part of complainant's directions, the use of these letters in this manner constitutes an infringement."

An inspection of the cough drops and packages of both parties submitted to us as part of the evidence taken upon the trial, shows, better than any written description can, a strong resemblance in some respects with as strong a difference in others. "It is not necessary," as we have said, "that the symbol, figure or device used or printed and sold for use, should be a *fac-simile*, a precise copy of the original trade mark, or so close an imitation that the two cannot be distinguished except by an expert, or upon a critical examination by one familiar with the genuine trade mark. If the false is only colorably different from the true; if the resemblance is such as to deceive a purchaser of ordinary caution; or if it is calculated to deceive the careless and unwary and to thus injure the sale of the goods of the proprietor of the trade mark, the injured party is entitled to relief. Neither is it necessary to establish a guilty knowledge or fraudulent intent on the part of the wrongdoer. It is sufficient that the proprietary right of the party and its actual infringement is shown." (*Colman* v. *Crump*, 70 N. Y. 573, 578.)

The burden of proof was upon the plaintiffs to establish a want of probable cause, but we think their own evidence shows that the defendant had probable cause to commence the action and procure the injunction, because the packages and drops of the plaintiffs resembled his own so closely as to

be "calculated to deceive the careless and unwary." The average purchaser would not know the difference.

We are asked to affirm the order of the Appellate Division upon the ground that the trial court erred in some of its rulings relating to evidence. We have examined the exceptions relied upon, but are of the opinion that if the ruling had been the other way in each instance, the substantial facts which control the question of law as to probable cause would have remained unchanged. As the plaintiffs failed to show a want of probable cause, they failed utterly, and the order of the Appellate Division granting them a new trial must be reversed and the judgment of the trial court affirmed, with costs in all courts.

CULLEN, Ch. J., GRAY, O'BRIEN, BARTLETT, HAIGHT and WERNER, JJ., concur.

Order reversed.