COLEMAN v. BROWN et al.

(Supreme Court, Appellate Division, First Department. May 15, 1908.)

1. FALSE IMPRISONMENT—DEFENSES—JUDICIAL PROCESS.

A decision of the court that an order of arrest in a civil action should not have been granted; because the papers on which it was issued did not sufficiently present the evidentiary facts, and in material respects stated conclusions of fact, which, though sufficient to confer jurisdiction and to call on the justice to decide as to their sufficiency, were not sufficient to sustain the order when directly attacked in the action, is merely a decision that the order, at most, constituted erroneous process in that the court erred in granting it, but is not a decision that the order constituted void process if the justice had jurisdiction, and it was his duty to decide whether or not the facts justified granting the order, and therefore the arrest and imprisonment under the order was not false.

2. SAME.

Plaintiff in an action for the amount of an unpaid check drawn by defendant in plaintiff's favor, together with interest and protest fees, sought an order for the arrest of defendant, and submitted to the justice of the court in which the action was pending affidavits that defendant had pro-

cured credit from plaintiff on the faith of the check, knowing that his bank account was insufficient to meet the same. The papers were sufficient to give the court jurisdiction, and the court issued an order of arrest, under which defendant was arrested and imprisoned. *Held,* that plaintiff was not liable to defendant for false imprisonment, though the court erred in granting the order, unless it appeared that plaintiff failed to disclose all of the facts known to him, or some of the material statements were untrue, to plaintiff's knowledge.

3. MALICIOUS PROSECUTION—PROBABLE CAUSE—EVIDENCE—SUFFICIENCY.

In an action for malicious prosecution, based on the arrest of plaintiff under an order of arrest procured by defendant in a civil action, evidence held not to support a finding of want of probable cause.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Malicious Prosecution, § 151–153.]

Appeal from Trial Term.

Action by John Coleman against James N. Brown and others. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Horace Comfort, for appellants.
Charles E. Kelley, for respondent.

LAUGHLIN, J. The complaint sets forth in separate counts two causes of action—one for false arrest and imprisonment, and the other for malicious prosecution. Both causes of action are based on an order of arrest procured by the defendants in an action against the plaintiff, brought in the Supreme Court of this state to recover the principal, interest, and protest fees, aggregating the sum of $2,098.93, as payees of a check drawn by him to their order on the People's Bank of Darlington, S. C. The order of arrest was granted by a justice of the Supreme Court, but on an appeal from an order denying the motion made by the defendants therein at Special Term to vacate the order on the original papers this court reversed the order and granted the motion. Brown v. Coleman, 95 App. Div. 545, 89 N. Y. Supp. 427. That decision of this court is relied upon as establishing that the order of arrest was void or irregular, and that, therefore, the arrest and imprisonment were false. This court neither held that the papers upon which the order of arrest was granted did not give the court jurisdiction, nor that the order of arrest was either void or irregular. The order of arrest was attacked directly in the action, and not collaterally. We held that it should not have been granted because the papers upon which it was issued did not sufficiently present the evidentiary facts and in material respects stated conclusions of fact, which, although sufficient to confer jurisdiction and to call upon the justice to decide as to their sufficiency, were not sufficient, according to the practice of the courts, to sustain the order when directly attacked in the action; and therefore, at most, the order constituted erroneous process, in that the court erred in granting it, but it did not constitute void process, for the justice had jurisdiction, and it was his duty, to decide whether or not the facts justified granting the order, and it was not irregular in the sense in which that term is used as applied to process,

which is that in issuing it some rule in statute has not been observed or
followed. Hall v. Munger, 5 Lans. 100; Landt v. Hilts, 19 Barb. 283;
Simpson v. Hornbeck, 3 Lans. 53; Swart v. Rickard, 148 N. Y. 264,
42 N. E. 665; Gilbert v. Satterlee, 101 App. Div. 313, 91 N. Y. Supp.
960; Day v. Bach et al., 87 N. Y. 56; Marks v. Townsend, 97 N. Y.
590; Fischer v. Langbein, et al., 103 N. Y. 84, 8 N. E. 251. See,
also, Bryan v. Congdon, 86 Fed. 221, 29 C. C. A. 670. The learned
trial justice ruled as matter of law that the arrest and imprisonment
were false. We are of opinion that this was error. It should have
been held as matter of law that defendants were protected by the pro-
cess of the court, and not liable on that count. The plaintiffs in that
action submitted to the justice of the court in which the action was
pending affidavits tending to show that the defendant therein had pro-
cured credit from them upon the faith of the check, knowing that his
bank account was insufficient to meet the same. As already observed,
the papers were sufficient to give the court jurisdiction. The court
presumably examined them, and approved them, as sufficiently setting
forth the essential evidentiary facts. That was a judicial determina-
tion for which the plaintiffs in the action should not be held respon-
sible, unless it be shown that they failed to disclose all of the material
facts known to them, or that some of the material statements present-
ed to the judge for judicial action were to their knowledge untrue.

The plaintiff was a tobacco broker, and the defendants were stock
and cotton brokers, conducting business on the New York Cotton Ex-
change. The defendants were acting as brokers for the plaintiff in the
sale of cotton, and the check was given as margin for their protection.
They gave plaintiff credit in his account with them for the amount of
the check and forwarded it for collection. It was returned protested
on June 25, 1903, by the Bank of Darlington, S. C., upon which it was
drawn, for want of funds, and has never been paid. On the 19th of
February thereafter the order of arrest was obtained. The facts with
respect to the prosecution being malicious and without probable cause
are uncontroverted, as defendants offered no evidence. The court left
those questions to the jury. We are of opinion that the verdict which
implies that the jury found want of probable cause is against the weight
of evidence, even though the evidence be sufficient to take the case to
the jury on that point, which is doubtful. See Burt v. Smith, 181 N. Y.
1, 73 N. E. 495. The evidence adduced by the plaintiff shows that,
after giving the check, he checked out his bank account upon which
the check was drawn, so that, when it was presented, there were insuffi-
cient funds to pay it. The plaintiff was transacting business at Dar-
lington, S. C., where he had this bank account, and he claims that on
the 18th day of June, two days before this check was drawn, he de-
posited in his bank a draft on the M. & F. Bank of Cheraw, S. C., for
$2,500, which was credited to his account, and that he had every rea-
son to believe that his account would be kept good by the deposit of
that draft, but that the draft was lost in the mail, and his account evi-
dently was charged with the amount thereof. Other evidence was giv-
en in behalf of the plaintiff tending to show that at about the same
time the bank lost other remittances and correspondence in the mail.
A statement was introduced in evidence, purporting to have been made

by the bank showing the condition of plaintiff's account on the 18th day of June, 1903. This statement shows that plaintiff's account was credited with the draft for $2,500 on the 22d day of May, 1903. The plaintiff claims that he was not informed of the loss of the draft until his return from Europe, which was several weeks after the date on which he drew the check. The plaintiff drew and forwarded the check to defendants from Darlington on the 20th day of June, 1903, and shortly thereafter left that place on his way to New York, from which he sailed for Europe on the 1st day of July, 1903. The statement of the bank contradicts the testimony of the plaintiff with respect to the time the draft for $2,500 was deposited to the credit of his account. Assuming the statement of the bank to be true with respect to the date of that transaction, it is probable that the loss of the draft was discovered and communicated to the plaintiff before he drew and forwarded the check to the defendants. No one connected with the bank was called as a witness to corroborate the plaintiff with respect to the time he was informed concerning the loss of the draft. The plaintiff further testified, in substance, that prior to obtaining the order of arrest counsel for the defendants was at Darlington, S. C., investigating the question and was informed of the facts with respect to the deposit and loss of the draft; that later on one of the defendants called on him at Winston Salem, N. C., where plaintiff resided, with respect to a settlement of defendant's claim against him on account of the check, and at this time plaintiff made a proposition to give a note secured by collateral, concerning which the defendant who called on him said he would have to consult with the other members of his firm before deciding thereon; that plaintiff agreed to call on the defendants in New York within a week or 10 days thereafter, and after his arrival in New York he made an appointment to meet them at 3 o'clock on a Saturday afternoon, but before the hour of the appointment he was arrested. The explanation of the plaintiff is far from conclusive. On the loss of the draft it would seem that plaintiff might have obtained another, and it does not appear but that he could have obtained the money for the payment of which the draft was given. He had obtained the benefit of the credit of this check with the defendants, and, if he did it in good faith, it would be reasonable to expect that he would act promptly and diligently in paying the indebtedness after learning that the check was not honored. Obtaining credit on a check which is not good is a serious matter, and those who do so innocently ordinarily adjust the matter promptly, or are able to satisfy the creditor of their inability so to do. The conduct of the defendants in having plaintiff arrested before meeting him to consider the question of settlement further seems ill advised and somewhat arbitrary; but in view of the fact that he was a nonresident, and that process could not be issued on the following day, justified preliminary steps to enforce their rights, and the couse pursued is not entirely inexcusable, and does not necessarily indicate either malice or want of probable cause. They had already been to considerable expense in endeavoring to secure a settlement, and a long period of time had elapsed. It seems probable that the jury rendered the verdict on account of the circumstances under which the arrest was made,

rather than upon a dispassionate consideration of the evidence bearing upon the question of probable cause.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

