Richard S. Heller, J.
This is a claim for malicious prosecution based upon the arrest, imprisonment and trial of claimant Henry M. Peers, Jr., during the summer and fall of 1953.
Claimant Peers, in the company of Major William Jones and two young ladies, was returning to New York City after a picnic on a part of Jones Beach. The party was proceeding northerly on Wantagh Boulevard, Nassau County, in an automobile owned by claimant. Near Sunrise Highway, Peers, who was driving, pulled the car over to a plot adjoining the highway so that Major Jones could drive the rest of the way into the city.
In order to accomplish this all parties had to transfer from their respective seats in the car and it was during this change that one Holroyd, a member of the Long Island State Park Police, stopped his car in back of the car of the claimant and after leaving his car started to question Major Jones and the claimant concerning driving licenses and the car registration.
It appears that he first asked Jones for his driving license and, in some manner, Jones not only gave him his license but also his A.GKO. card. Holroyd then asked for the car registration and Peers started looking through his wallet to comply *780 with the request. Some papers fell from Peers’ wallet and the wind apparently blew them about a bit before Peers was able to locate the car registration. Upon finding the registration, he walked over to where Jones and Holroyd were engaged in a conversation concerning the return of Jones’ license.
Although Peers attempted to give the car registration to Holroyd, the officer chose to ignore him and to keep insisting that he had returned Jones’ license. In view of the windy condition, Peers placed his left hand on Holroyd’s arm to stop the gesticulating by Holroyd and placed the registration between the thumb and finger of the officer’s right hand. At this moment things began to happen. The officer handcuffed Peers on the left wrist and told Mm he was under arrest. Shortly thereafter he completed handcuffing Peers, then called for help on Ms radio, although there is no proof of any tussle or trouble at tMs time.
Shortly thereafter another officer arrived at the scene. The identity of this officer is clouded with doubt since the claimant and Jones both swore that Radcliffe, who was produced at both trials, was not the officer on the scene the night of the arrest.
With the arrival of the second officer, the testimony begins to conflict. Radcliffe swore that when he arrived at the scene Peers had Holroyd backed against the left front fender of the patrol car and that Peers was threatening him. Radcliffe further swore that he helped Holroyd handcuff Peers by placing both arms of Peers behind his back and further, that he assisted placing Peers in the patrol car.
The claimant swore that he was handcuffed by having both arms in front of the body. Claimant and Jones both swore that the handcuffing had taken place long before any other officer arrived at the scene and that no other officer helped Holroyd place Peers in the car. In addition both were emphatic that Radcliffe was not at the scene.
After claimant had been placed in the car he was driven to the county jail at Mineóla, where he was placed in a cell and kept overnight. Attempts by Jones to have him freed on bail were unsuccessful and on Sunday morning Peers was taken before a District Court Judge for Nassau County, pleaded not guilty to the charges and asked that he be released on bail. It should affirmatively appear that there was no examination of the facts by Judge Widlitz, who presided.
Subsequently and on October 22, 23 and 24, 1953, a trial of claimant was held and Peers was acquitted of all charges by a jury. The claim against the State was filed shortly thereafter.
A malicious prosecution is one that is begun in malice, with *781 out probable cause to believe it can succeed and which finally ends in failure. (Burt v. Smith, 181 N. Y. 1.)
The claimant having been acquitted, it is first established that the proceedings have been terminated in his favor. (Halberstadt v. New York Life Ins. Co., 194 N. Y. 1.)
Claimant has the burden to prove that the arresting officer acted without probable cause of the successful prosecution of the offenses charged.
In Burt v. Smith (supra, p 5) the court said: ‘‘ Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.”
The arresting officer, Holroyd, did not testify in this trial. No one knows his reasons for the arrest, the facts as he saw them; his physical or mental condition on the night in question or his previous training or experience. The State asks this court to infer probable cause from four sources. The information, the call on the radio for additional help, the testimony of Radcliffe and the hearing before Judge Widlitz.
Probable cause cannot be inferred from an information filed by an arresting officer when no further proof is adduced to establish the facts as alleged. The failure of Holroyd to testify, although he was available at all times to the State, plus the inconsistency of Radcliffe’s testimony, can only rule out completely any value to the State of the information admitted as claimant’s Exhibit “8”.
Holroyd’s failure to testify as to why he used the radio to ask for assistance destroys a possible inference in behalf of the State that he was in trouble.
Radcliffe’s testimony is inconsistent, his presence is disputed by the claimant and Major Jones, his testimony concerning the assault is not borne out by the information sworn to by Holroyd, and the arrest having been made before he arrived clearly indicates he had no knowledge of probable cause.
The State’s contention that a presumption of probable cause arises from the hearing before Judge Widlitz is untenable. The examination was not to the facts of the arrest but for the purpose of informing the claimant of the charges, of his right to counsel and to be allowed his freedom on bail. The law is established that such an examination raises no presumption. (Hodge v. Skinner, 254 App. Div. 42; Armstrong v. Mishkin, 286 App. Div. 864.)
Probable cause is a question of law for the court to decide and it has no alternative, in view of Holroyd’s failure to testify, *782 but to find that Holroyd did not have probable cause as defined above.
Such a finding will present a future problem in cases of this sort but it should be remembered that had Holroyd taken the stand, and told his story, that the testimony would have been given great credence because in our society an arresting officer can and does make mistakes but such mistakes do not establish lack of probable cause and will not support an action for malicious prosecution.
We now turn to the question of malice. Actual malice need not be shown but may be inferred from lack of probable cause. (Dean v. Kochendorfer, 237 N. Y. 384.)
The failure of Holroyd to testify and the lack of probable cause is sufficient under the circumstances to infer malice (Vallon v. Ramage, 196 Misc. 740).
The failure of the arresting officer, Holroyd, to testify in this trial justifies the court in construing the evidence presented by the claimant most strongly against the State which could have produced the witness. (Parkas v. Parkas, 265 App. Div. 521; Jarcho Bros. v. State of New York, 179 Misc. 795.)
Claimant having been acquitted of all charges has adequately proved lack of probable cause and malice on the part of the arresting officer and in turn on the part of the State, and the State has failed to establish probable cause for the arrest.
Testimony was offered that claimant paid his attorney $1,100 to successfully defend him against these charges. The court finds the amount reasonable and that it constitutes legitimate damages.
Other than the legal expense, recovery in this action must be limited to general damages since the loss of business alleged in the claim has not been established to the satisfaction of the court.
Claimant was arrested and handcuffed before his friends, detained overnight and lost three or more days away from his business. There was unpleasant publicity and claimant was naturally upset emotionally because of the incident.
Considering the reputation and business activity of the claimant ; the nature of the charges placed against him and resulting injury, it is the opinion of the court that claimant has been damaged in the sum of $2,750 in addition to the disbursements made for counsel fees.
Claimant is entitled to a judgment in the amount of $3,850 which shall be entered by the clerk.
All evidence upon which decision was reserved is received except the testimony of Badcliffe concerning his knowledge of *783 what Holroyd had said at the criminal trial. That portion of Radcliffe’s testimony is received for the sole purpose of testing his memory and not the substance of the query.
The foregoing constitutes the written and signed decision of the court as required by section 440 of the Civ Practice Act.