Burke, J. (concurring).
While I agree entirely with the result reached by the majority in this case, and concur in their conclusion that the statutory phrase “ any person ” must necessarily be interpreted to exclude plaintiff (defendant herein), I do so for reasons other than those set forth in the majority opinion.
As we have held so recently in another situation, the purpose and applicability of a statute cannot be considered without first discussing its legislative history. (French v. Banco Nacional de Cuba, 23 N Y 2d 46.) I would also add that the statute must be viewed in light of the law existing at the time of its enactment. I, therefore, begin with a discussion of that law.
As early as 1850, this court unanimously adopted the common-law rule that words spoken or written in a judicial proceeding by a party to that proceeding could not provide the basis of a cause of action for libel (Garr v. Selden, 4 N. Y. 91). As one eminent authority expressed it, ‘ ‘ The interest of society requires that whenever men seek the aid of courts of justice, either to assert or to defend rights, of person, property or liberty, speech and writing therein must be untrammelled and free. The good. of all must prevail over the incidental harm to the individual. So the law offers a shield to the one who in a legal proceeding publishes a libel, not because it wishes to encourage libel, but because if men were afraid to set forth their rights in legal proceedings for fear of liability to libel suits greater harm would result, in the suppression of the truth. The law gives to all who take part in judicial proceedings, judge, attorney, counsel, printer, witness, litigant, a right to speak and to write, subject only to one limitation, that what is said or written bears upon the subject of litigation”. (Seelman, Libel and Slander in the State of New York, ¶ 191 [1933 ed.]; emphasis supplied.) Thus, prior to both this court’s decision in Lewis v. Chemical Foundation (262 N. Y. 489) and the recent (1930 and 1940) amendments to section 337 and 337-a of the Civil Practice Act, it was established beyond refute that a party had an absolute right to say anything in a judicial proceeding, without fear of committing a libel, in accord with a general policy of encouraging the use of the courts.
*601 I turn now to the statute and its amendments. The first statute, enacted in 1854, was not intended to, and did not, alter the common-law protection afforded litigants. Bather, the enactment recognized another common-law rule which created a qualified privilege —■ rendered inapplicable by showing actual malice — for a fair and true report of a judicial proceeding by “ a reporter, editor, publisher, or proprietor of a newspaper ’ ’. The statute’s purpose was to permit the press to inform the public of judicial proceedings, free from liability. In 1930, the Legislature overruled that aspect of the statute which limited the protection to instances where there was no actual malice. Obviously, the deletion of the malice provision was a further encouragement to the press to publish “true and fair reports ” of judicial proceedings.
Subsequent to that amendment, this court had before it the case of Lewis v. Chemical Foundation (262 N. Y. 489, supra). There, the cause of action accrued in 1930, prior to the aforementioned amendment. As the majority properly noted, after reciting the pertinent facts, this court was merely asked in Lewis to review the trial court’s charge which required that plaintiff prove there was malice on the part of the defendant when he made the publication. We affirmed the correctness of that charge.
Seven years after this memorandum decision was published, the Legislature enacted the predecessor of section 74 of the Civil Bights Law, which provides that ‘ ‘ A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding The bill jacket accompanying this amendment, stated that it “ confers upon all persons the same privilege now accorded to newspapers and radio broadcasters by sections 337 and 337-a of the civil practice act, which privilege, by decision of the court of appeals is accorded to all persons (see Lewis v. The Chemical Foundation Incorporated, et al., 262 N. Y. 489 (1933); Seelman, Libel and Slander in the State of New York, Sec. 213).”
To understand this amendment, we are thus required to analyze the authority for it. It is undisputed that the Lewis decision dealt merely with the question of actual malice where the defendant had republished a newspaper article. Seelman, commenting on the statute’s predecessor in paragraph 213 of his work, declares that, although “ the statute refers only to news *602 papers, considerable doubt exists whether the statute gives to newspapers any right which is not equally enjoyed by all citizens freely to publish fair and true reports of judicial proceedings.” That author cites two cases, neither of which is factually similar to the case before us. The first of these cases, Stuart v. Press Pub. Co. (83 App. Div. 467), involved the affirmance by the Appellate Division of an order of the Trial Judge setting aside a jury verdict as inadequate and ordering a new trial. In that libel action, plaintiff contended, inter alia, that the defendant newspaper exceeded the privilege afforded by the statute for the publication of a “ fair and true report of a judicial proceeding ” when the newspaper published information that was in no way contained in the judicial proceeding. This information was considered outside the scope of the statutory protection. The second case, Robinson v. Battle (148 App. Div. 230), was also a libel action. The defendant in that action was charged with having “ composed for publication in said newspaper” an alleged libelous article affecting the plaintiff. Defendant set forth two separate defenses to this action and plaintiff demurred to both of them. In his first defense, defendant, an attorney, who represented plaintiff’s wife in a prior matrimonial dispute, contended that he was justified in writing the article as it merely referred to the specific findings of fact and conclusions of law of the Justice who tried the matrimonial action. In a word, he pleaded that the article was true. The defendant asserted as a second defense to the action that the article was privileged in that the statement was a true and fair report of a concluded judicial proceeding and that there was no malice involved in furnishing the article to the newspaper. This defense was also sustained against the demurrer, without comment or explanation.
It is in this setting that we are asked to determine the intent of the Legislature when they enacted the predecessor of section 74 of the Civil Eights Law. Our duty is apparent. We must determine whether the amendment enlarges the right of a litigant in a judicial proceeding or the right of a person who publishes a “fair and true report ” of that proceeding. As indicated above, the litigant was under no restraint insofar as he could write or say anything he desired, so long as it related to litigation. The reporters, on the other hand, were required to *603 limit their publications to true and fair reports of judicial proceedings.
Were the Legislature planning to expand the rights of the litigants to the point where they could both commence a suit with impunity and then publish a true and fair report of that suit — albeit with actual malice — and escape liability, I feel some mention of this would have been made. Certainly, they were aware of the paragraph in Seelman (¶ 191) which discusses the rights of parties to be free from actions for libel as that paragraph precedes the paragraph cited in the bill jacket. I, therefore, conclude that it was never the intention of the Legislature in the 1940 amendment to allow “ any person” to institute a judicial proceeding alleging false, malicious and defamatory charges, and then to circulate a press release or other communication based thereon and escape liability by invoking the statute. The purpose of the 1940 amendment, I submit, was to extend to all disinterested persons the privilege then possessed by the press — to publish true and fair reports of judicial proceedings without fear of liability. Such an interpretation gives this statute a meaningful purpose. The alternative construction, suggested by defendent, cannot claim any such purpose. Indeed, it is clearly sufficient that parties — particularly plaintiffs — be protected from anything that they say or write which is germane to a lawsuit, without clothing them also with an absolute right to distribute whatever malicious matter they may author. Moreover, the construction I propose is in accord with the Supreme Court’s statement in Rosenblatt v. Baer (383 U. S. 75, 86): ‘ ‘ Society has a pervasive and strong interest in preventing and redressing attacks upon reputation ”. We are delegated with the responsibility of protecting that right.
It is also noteworthy that charges such as those contained in the initial complaint could have been made if true in an open letter to the persons who, as in this case, are in a particular industry and might have dealings with the plaintiff. Such notice would then make these competitors liable for any damages suffered by Universal as a result of their use of trade secrets. This rule of liability is well settled and was recognized prior to the 1940 amendment to the Civil Practice Act. (See, e.g., Colgate-Palmolive Co. v. Carter Prods., 230 F. 2d 855, 864-865.) *604 Plaintiff alleges that the Universal action was maliciously instituted for the sole purpose of maligning him. Implied in this allegation is his contention that the present defendant resorted to the process of the court so that—without subjecting himself to liability — he could do indirectly what could not be done directly.
The interpretation of section 74 proposed by the defendant and accepted by the dissenters would extend the right of the employer from the above-mentioned rule where the charges are true to the present situation where, according to the allegations of the complaint, the charges are false and malicious. Again I note that the Legislature did not indicate any intention to achieve such a result when they enacted the 1940 amendment. I can perceive of no reason which would justify such an unwarranted expansion.
The dissenters, acknowledging their opposition to malicious lawsuits, suggest that the plaintiff may have a remedy in an action for malicious prosecution. In proposing such an alternative, they ignore the clear admonition of the statute that ‘ ‘ A civil action cannot be maihtained * * * for the publication of a fair and true report of a judicial proceeding ’ ’. If the alleged acts do not constitute a libel, it should logically follow that the same acts do not constitute a basis for an action alleging malicious prosecution. Additionally, it should be noted that plaintiff has not pleaded the essential elements of a cause of action for malicious prosecution. It is well settled that the mere bringing of a civil action, even if groundless, ill motivated and damaging to the defendant, does not provide a sufficient basis for such an action unless the person or property of the plaintiff was interferred with by some incidental remedy such as attachment, arrest or injunction. (See, e.g., Munoz v. City of New York, 18 N Y 2d 6; Burt v. Smith, 181 N. Y. 1; Lustig v. Greene, 30 A D 2d 935, mot. for lv. to app. den. 23 N Y 2d 644.) The alternative is therefore untenable.
In conclusion, I am of the opinion that to interpret the words “ any person ” to include the parties to the litigation not only fails to conform to the reasoning behind the common-law rules relating to the commencement of an action and the need for truly *605 and fairly informing the public of such proceedings, but serves instead to permit persons to institute false and malicious actions and then publish copies of the pleadings in those actions with impunity.