Chief Judge Fuld (dissenting in part).
The complaint should be dismissed in its entirety. In my view, the count alleging libel is just as lacking in merit as that—which the court is holding insufficient — charging abuse of process.
As I see it, an unreasoned and unreasonable fear of abuse — a fear that people will deliberately file complaints containing maliciously false, defamatory and unsupportable allegations for the purpose of publishing and circulating copies of those complaints — has led my brothers of the majority to sustain the libel cause of action despite the absolute privilege granted by section 74 of the Civil Rights Law. Indeed, I suggest, the court implicitly recognizes that no cause of action is stated for libel by providing that the trial is to be held in abeyance until the other case, in which the present plaintiff is a defendant, has been disposed of in his favor and shown to be without foundation or merit. The strained and incongruous result thus achieved not only is at odds with the language and with the legislative history of section 74 but is completely unnecessary to protect against the sort of abuse envisioned by the court.
In September of 1965, the Universal Oven Company — of which the defendant Robert Williams and his mother were the principal officers — served and filed, in the Supreme Court, New York County, the complaint charging the plaintiff herein, his brother Richard, with conspiring to misappropriate and misuse the company’s trade secrets and assets.[1] After the complaint had been filed and, by that token, the judicial proceeding begun, Robert Williams had copies of the summons and complaint in the Universal Oven suit printed and circulated to mem *606 bers of the trade.[2] A letter accompanied the documents, signed by the mother of the two Williams brothers as chairman of the board of Universal Oven, but it contained no statement as to the subject matter of the action other than that the summons and complaint were on file in the Office of the Clerk of the County of New York.
The plaintiff, as well as the court, recognizes that a newspaper or other stranger to the Universal Oven litigation could have, with complete impunity, published the complaint in that case or described its contents. But, it is said, circulation of that absolutely privileged pleading by this defendant to interested parties, engaged in the same trade as the Universal Oven Company, subject him to an action for libel. The contention flies in the face of both the language and the legislative history of the Civil Rights Law. In the plainest of terms, section 74 of that statute declares:
‘ ‘ A civil action cannot be maintained against any person * * # for the publication of a fair and true report of a judicial proceeding ”.
The provision contains no exception or qualification, either express or implied, for persons who initiated or were parties to the judicial proceeding, and no such exception or qualification is indicated in the legislative history. In fact, there is basis for the conclusion that the Legislature had in mind, when it adopted the present statutory language, situations very like the one in the case now before us.
A statutory privilege for reports of judicial proceedings has existed in this State since at least 1854 (L. 1854, ch. 130, §§ 1, 2). Up until relatively recently, it is true, that privilege was a qualified one — which could be defeated by a showing of actual malice — and applied only to “ a reporter, editor, publisher * * * of a newspaper.” (See former Civ. Prac. Act, § 337, as enacted by L. 1920, ch. 925.) However, the more recent developments in this area, both legislative and judicial, have removed any reasonable ground for the conclusion that a showing of malice.can *607 defeat the privilege where the report is not a “ news story ” (opn. of Jasen, J., p. 599) or not made by a “ disinterested ” person (concurring opn. of Burke, J., p. 603). Thus, in 1930, the Legislature broadened the privilege, specifically deleting the exception — previously contained in section 337 of the Civil Practice Act — for actual malice and rendering the privilege absolute (L. 1930, ch. 619). The last major amendment to the statute —the one most clearly circumvented by the decision now being made — extended the privilege previously granted to newspapers (more precisely, to" their reporters, editors or publishers), to “ any person, firm or corporation ” (L. 1940, ch. 561). Any possible doubt that this language was designed to apply to all persons, including active participants in the proceeding reported on, is completely dispelled by the legislative history which accompanied the amendment. The Judiciary Committee of the Assembly, in the course of its Report (1940 Assembly Journal, vol. 1, pp. 1021-1022), unequivocally stated that
“ This amendment confers upon all persons the same privilege now accorded to newspapers and radio broadcasters by sections 337 and 337-a of the civil practice act, which privilege, by decision of the court of appeals is accorded to all persons (see Lewis v. The Chemical Foundation Incorporated, et al., 262 N. Y. 489 (1933); Seelman, Libel and Slander in the State of New York, Sec. 213.” (Emphasis supplied.)
In the Lewis case (262 N. Y. 489), to which the Committee referred, it was alleged that in January of 1930— at a time when the statutory privilege was still a qualified one — the defendants had privately circulated 200,000 copies of a deposition made by one of them in an earlier proceeding in which the latter was a party. The plaintiff argued that these self-serving statements should not be accorded any protective privilege since the ‘ ‘ publication of the libel by the author is not ‘ the publication of a fair and accurate report of a judicial proceeding ’ ”. (See Brief of Plaintiff-Appellant Lewis [in Court of Appeals, 262 N. Y. 489], pp. 24-25.) This court disagreed, holding that the defendants were entitled to the same statutory privilege then granted to those connected with newspapers, despite the fact that one of them was actually a party in the earlier proceeding and no public policy was shown to be served by the publication and circu *608 lation of a report containing the false and defamatory material. Although the Lewis decision was the only case in which the Legislature specifically referred, it was not the only decision which had held, prior to 1940, that any person, even one interested in the proceeding, was entitled to invoke the privilege. (See, e.g., Robinson v. Battle, 148 App. Div. 230; Oglesby v. Cranwell, 250 App. Div. 720.) In the Robinson case (148 App. Div. 230, supra), for instance, thé privilege was held applicable to a report of a judicial proceeding even though prepared for the press by the attorney for the plaintiff and, in Oglesby (250 App. Div. 720, supra), the court expressly declared that the privilege applied ' ‘ even though the report is published through the efforts or at the suggestion of the pleader.”
Viewing the clear and unambiguous language of the statute in the light of these decisions and of the history of the privilege in general, the conclusion is clear that the absolute protection previously granted newspapers was, indeed, intended to be conferred upon and inure to the benefit of “ any person ”, whether or not he participated, or was involved, in the original proceeding.
Although the result of applying the statute as it was written may, perhaps, be to allow an occasional libel to go uncompensated, this does not require us, to cull from the court’s opinion (p. 598), to attribute “ extreme maliciousness to the Legislature ”, The simple fact is, as Judge Burke very appropriately observes — quoting from Seelman’s work on Libel and Slander — “ ‘ The good of all must prevail over the incidental harm to the individual ’ ” (concurring opn., p. 600). And, continuing to quote, Judge Burke adds, “ ‘ thé law offers a shield to the one who in a legal proceeding [or, I would interpolate, in a report of such proceeding] publishes a libel, not because it wishes to encourage libel, but because if men were afraid to set forth their rights in legal proceedings [or to inform other interested persons thereof] for fear of liability to libel suits greater harm would result, in the suppression of the truth ’ ”.
Vehemently opposed though I am to a maliciously false and baseless lawsuit — whether or not it was instituted by the plaintiff to afford him a predicate for thereafter publishing the complaint — I do not believe that we should seek to discourage such conduct by misreading the applicable statute or rewriting its *609 legislative history in order to sustain a cause of action for libel. Just because the statute forbids the bringing of a libel action, or any other, “ for the publication of a fair and true report of a judicial proceeding,” it.,does not follow, as the majority suggests (concurring opn., p. 604), that it also prohibits an action, based upon the commencement of that proceéding. In other words, the fact that the law sanctions the publication of a report of a judicial proceeding does not mean that it protects the institution of that proceeding if it was malicious and without probable cause. In short, the publication is an act entirely separate and distinct from that (earlier committed) of maliciously initiating a false and baseless lawsuit. Since the commencement of such a suit, wholly apart from any subsequent publication relating to it, is itself a cognizable and actionable tort (see, e.g., Munoz v. City of New York, 18 N Y 2d 6, 9; Burt v. Smith, 181 N. Y. 1, 5; Freides v. Sani-Mode Mfg. Co., 33 Ill. 2d 291; Hubbard v. Beatty & Hyde, 343 Mass. 258), neither reason nor logic would prevent the plaintiff from seeking damages for malicious prosecution if he were ultimately to prevail in the original conspiracy litigation.[3]
Nor may such a cause of action be ruled out on the ground, advanced by the court, that there must be ‘ ‘ interference with plaintiff’s person or property” (opn., p. 596, n. 2; also concurring opn., p. 604). Although language in lower court cases may be found to such effect, the Court of Appeals has never so decided. On the contrary, in Burt v. Smith (181 N. Y. 1, 5, supra), this court — though noting that “ [d]amages are rarely recovered * * * for the malicious prosecution of a civil action, unless person or property is interfered with ’ ’ — made it quite clear that such a suit “ may be founded upon a civil action when commenced simply to harass and oppress the defendant.” And, in our most recent utterance on the subject (Munoz v. City of New York, 18 N Y 2d 6, supra), the court, after observing that “ the essentials of malicious prosecution” were laid *610 down in “ a single incisive sentence ” in the Burt case, went on to say that (18 N Y 2d, at p. 9) “ [t]he rule has nowhere been stated more succinctly than this: ‘ A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure.’ ”
The conclusion, therefore, is clear; the fear felt by the majority —• to which I alluded above — that according an absolute privilege to one who publishes a report of a maliciously activated judicial proceeding “ would be sanctioning an ingenious means of defamation ” (opn., p. 598) is without foundation.
Statements which appear in the opinions that the statute was not intended to allow “ 1 any person ’ to maliciously institute a judicial proceeding” (opn., p. 599) or “to permit persons to institute false and malicious actions ” (concurring opn.. p. 605) persuasively establish that the court is truly concerned not with the alleged defamation, relevant though it may be on the issues of motive and damages, but to the allegedly malicious institution of the earlier proceeding. This is, indeed, borne out by the court’s determination that the libel action is not to be tried until, and if, Universal Oven’s conspiracy action has been terminated and disposed of adversely to Universal. Thus revealed is the majority’s recognition that the present plaintiff’s action depends solely upon whether the defendant was guilty of malicious prosecution of the original litigation — whether, in other words, he caused Universal Oven’s suit to be brought in bad faith and without probable cause — and not upon the subsequent publication and circulation of the complaint.
The order appealed from should be reversed and the complaint dismissed.
Opinion by Judge Jasen. All concur, Judge Burke in a separate opinion in which Judges Scileppi, Keating and Breitel also concur, except Chief Judge Fuld, who dissents in part and votes to reverse and dismiss the complaint in an opinion in which Judge Bergan concurs.
Order modified, with costs, in accordance with the opinion herein and, as so modified, affirmed. Question certified answered in the negative.

. As Judge Burke acknowledges in Ms concurring opinion (p. 600) —and, of course, it is indisputable — the filing of that complaint initiated a judicial proceeding and nothing set forth in the pleading could be made the subject of an action for libel, no matter how false or malicious the pleader or .the allegations may have been. (See, e.g., Wiener v. Weintraub, 22 N Y 2d 330, 332; Garr v. Selden, 4 N Y 91.)

. The defendant Robert explains that the motivation for doing this was to give notice to others in the industry because of .the rule that they could be held liable to Universal Oven for damages or loss of profits only if they were chargeable with knowledge that Richard and the other defendants in .the Universal Oven case were using its trade secrets and violating their contracts with it. (See, e.g., Colgate-Palmolive Co. v. Carter Prods., 230 F 2d 855, 864-865.)

. The plaintiff, in order to bring such an action, would, of course, have to show certain additional facts not here alleged — facts such as that the original proceeding was instituted without probable cause and that it was terminated in a manner favorable to him. (See, e.g., Munoz v. City of New York, 18 N Y 2d 6, 10; Mauser v. Bartow, 273 N. Y. 370, 375.) It is the absence of these elements which renders the complaint here challenged insufficient.